**UNITED STATES of America, Plaintiff–Appellant/Cross Appellee,**

v.

**Craig Dwight McCANN, Defendant–Appellee/Cross Appellant.**

**Nos. 90–4109, 90–4129.**

United States Court of Appeals, Tenth Circuit.

July 26, 1991.

---

Mark Vincent, Asst. U.S. Atty. (Dee Benson, U.S. Atty., and Richard D. McKelvie, Asst. U.S. Atty., with him on the briefs), Salt Lake City, Utah, for plaintiff-appellant/cross appellee.

Ronald J. Yengich of Yengich, Rich, Xaiz & Metos, Salt Lake City, Utah, for defendant-appellee/cross appellant.

Before TACHA, BARRETT and BRORBY, Circuit Judges.

BARRETT, Senior Circuit Judge.

In these consolidated appeals, both parties challenge rulings of the district court in the sentencing of Craig D. McCann (McCann).

McCann was charged in a nine count superseding indictment with: the passing of counterfeit money; possession of counterfeit money; possession of counterfeit birth certificates; possession of approximately 1.5 liters of P2P with intent to manufacture methamphetamine; attempt to manufacture approximately 450 milliliters of P2P; attempt to manufacture approximately 2.2 kilograms of methamphetamine; possession of four firearms in connection with a drug trafficking crime; possession of a firearm by a convicted felon; and possession of an unregistered firearm, in violation of 18 U.S.C. §§ 472, 922(g), 924(c), 1028(a)(3); 21 U.S.C. §§ 841(a)(1), 846; 26 U.S.C. §§ 5861(d) and 5871.

After one day of trial, McCann agreed to plead guilty to Counts II (possession of $6,250 in counterfeit money), IV (possession of P2P with intent to manufacture methamphetamine), and VII (possession of four firearms in connection with a drug trafficking crime). In exchange for McCann's plea, the government dismissed the remaining counts. The parties stipulated that the exact amount of P2P possessed by McCann "is not readily provable." (R., Supp. Addendum, p. 7). This stipulation effectively amended Count IV of the superseding indictment to charge McCann with "knowingly possessing a measurable amount [of P2P], but without statement as to how much." (R, Vol. II, p. 7).

Out of the presence of the jury, the court questioned counsel concerning the stipulation. When the court inquired of counsel for defendant McCann whether he was satisfied that "this action" would be in the best interests of the defendant, counsel responded:

MR. YENGICH: I am, given the potential of mandatory minimum sentencing under the drug counts, and particularly, and given the defendant's desire to settle this matter and enter a plea and accept responsibility....

*Id.* at 2–3.

Following the government's stipulation that it was not charging a specific quantity of drugs in the indictment, the parties proceeded under the belief that the mandatory minimum sentence based on the quantity of drugs involved was eliminated from the court's consideration. (R. Vol. I., Tab 50, pp. 2–3). In so doing, the parties relied on *United States v. Crockett*, 812 F.2d 626, 628–29 (10th Cir.1987), a pre-sentencing guidelines case,[1] in which we adopted *United States v. Alvarez*, 735 F.2d 461, 468 (11th Cir.1984), for the proposition that, without an allegation as to drug quantity in the indictment, the trial court could not impose an enhanced sentence.

The court observed that the amount of a particular drug would affect sentencing if it were found to exist at a certain level and that, under the plea bargain herein, the parties had stipulated that the amount was indeterminant. Counsel for the government responded that the court was "exactly right," and that the government had determined that the amount of drugs was "not readily determinable at this time." (R., Vol. II, p. 8). Thereafter, McCann pled guilty to Count IV "with [the] modification" that he would not be subject to a mandatory minimum sentence. *Id.*

---

1. The United States Sentencing Commission's sentencing guidelines took effect on November 1, 1987, and applied to all offenses committed on or after that date.

Counsel for the defendant thereafter, in the course of examination of the defendant, asked the defendant whether he understood that the court "[w]ill rely upon the Probation Department and the Presentence Report and his own enlightened discretion to determine what he feels is best." *Id.* at 16. Defendant McCann responded, "Yes." *Id.*

The trial court then found that the defendant had voluntarily changed his plea with full understanding of the consequences and with understanding of the penalties, taking into consideration the report of the Probation Department based on the Sentencing Guidelines Act. *Id.* at 16–17. After detailed examination, the court accepted McCann's guilty plea to Count IV, as modified. *Id.* at 30.

Following the government's stipulation that the exact amount of P2P possessed by McCann "is not readily provable," the parties submitted briefs on whether the court, for purposes of computing a sentencing range, could consider the quantities of drugs which McCann possessed at his residence and which were contained in the laboratory therein.

In its brief, the government asserted that the only purpose of the stipulation, i.e., not charging a specific quantity of drugs in the indictment, was to eliminate the mandatory minimum sentence to the substantial benefit of McCann:

> According to the government's calculations, defendant possessed fifteen hundred milliliters of P2P and was capable of manufacturing with the other chemicals on hand an additional four hundred and fifty milliliters of P2P. Since defendant has stipulated that the P2P was possessed for purposes of manufacturing methamphetamine, one thousand nine hundred and fifty milliliters of P2P has the equivalency of four thousand fifty-six grams of cocaine under § 2D1.1 of the sentencing guidelines. Without the government's stipulation, 21 U.S.C. § 841(b)(1)(B) would impose a statutory minimum mandatory sentence of five years for this quantity of P2P, and defendant would be subject to a *ten year*

minimum mandatory sentence with a prior conviction such as he has. With respect to the attempted manufacture of methamphetamine, the above referenced equivalency tables state that the 2.2 kilograms which Defendant attempted to manufacture has the equivalency of 11 kilograms of cocaine. 21 U.S.C. § 841(b)(1)(A) creates a statutory minimum mandatory sentence for the defendant as to this quantity of ten years, *twenty years* if the defendant has a prior conviction. Thus, while the defendant appears to have a substantial guideline sentence according to probation office calculations (77–96 months) and a mandatory five year term in addition to that guideline sentence, he is spared a 35 year minimum mandatory sentence (20 years for attempted manufacture of 2.2 kilos of meth, 10 years for possession of 1,950 grams of P2P and five years for possession of a firearm in connection with a drug trafficking crime). Using this analysis, there is a substantial benefit that the defendant reaps from his plea.

(R., Vol. I, Tab 50, pp. 3–4).

The defendant, on the other hand, contested the entire determination of the amounts of P2P and contended:

> The defendant entered a guilty plea in this case with the understanding that no amount levels could be determined. It was for that reason that the plea was entered. The defendant concedes that the maximum amount of P2P or methamphetamine to be employed in the calculation of guidelines, is two grams of methamphetamine and no more.

(R., Vol. I, Tab 57, pp. 5–6).

At a subsequent hearing, this colloquy occurred between the court and counsel for the government:

> THE COURT: Tell me, what is the value of a person bargaining for something like this if through the back door the probation office can put on evidence that the court is supposed to look at that would totally destroy the value of the bargain?
>
> MR. RYAN: Well, I guess it gets down to what the bargain is.

(R., Vol. V, p. 17). Thereafter, the district court observed that it understood that it had the right to reject a plea agreement and look at whatever it wants. *Id.* at 19.

An initial presentence report was prepared within which McCann was assigned an offense level of 24. The offense level of 24 was calculated by using 1,950 grams of P2P as the quantity possessed by McCann. The 1,950 grams of P2P was based on the information provided by a DEA agent that 1,500 grams of P2P were found in McCann's home and by a DEA chemist's determination that 450 grams of P2P could be produced from the precursor chemicals also found in McCann's home. These determinations were made by chemists following the stipulation entered into by the parties. The offense level of 24 resulted in a recommended sentence range of 77 to 96 months imprisonment on Count IV.

Following review of the presentence report by McCann and his counsel, McCann filed a motion to withdraw his guilty plea or, in the alternative, for a hearing on the application of the sentencing guidelines. (R., Vol. III, p. 2). The crux of defendant's position on Count IV was that he had pled guilty simply to possession of an indeterminative amount of P2P. *Id.* at 8. The government responded that "the probation office, knowing this stipulation, can and should include all the amounts of drugs ... under the relevant conduct provisions of the sentencing guidelines." *Id.* at 12. The court denied the defendant's motion to withdraw the guilty plea, but did set down for further hearing a determination of the meaning of the plea bargain.

A revised presentence report and addendum calculated McCann's sentence on the amount of methamphetamine which 1,950 grams of P2P would produce. The report determined that 1,950 grams of P2P would produce 2.2 kilograms of methamphetamine (according to the DEA chemists), resulting in an offense level of 30. The offense level of 30 was the basis for a recommended sentence range of 110 to 137 months imprisonment on Count IV.

McCann objected to the recommended sentence. He argued that he had pled guilty based on his understanding that the government's stipulation that the exact amount of P2P he possessed "is not readily provable" precluded any consideration of the P2P and precursor chemicals in determining his sentence. (R., Vol. IV, pp. 1–2). The government responded that the stipulation was intended only to eliminate the mandatory minimum sentence on the drug count, but not to restrict the district court's consideration of the chemicals found in McCann's home in computing a sentencing range.

The court subsequently entered a written order in which it found:

6. The specific term in the stipulated facts portion of the plea agreement which provided that the amount of P2P possessed by defendant is not readily provable modified the general understanding and recognition ... that the court should consider factual data and information as to counts to be dismissed. In this regard, the court finds that it was reasonable for defendant to conclude and that he did conclude that drug quantities beyond a measurable amount would not be presented for purposes of computing a sentencing range.

(R., Vol. I, Tab 62, p. 7).

During a subsequent hearing, the district court directed the probation office to recalculate McCann's sentence range without regard to the amount of P2P or other precursor chemicals which McCann possessed. In so doing, the court found:

I have ... previously entered a finding that there was a meeting of the minds and agreement between the government and the defendant, that the quantity of P2P possessed at the residence contained in the laboratory included in Count 4 was indeterminate and would not affect sentencing.

I now find based upon all of the evidence subsequently brought forward that as part of the meeting of the minds of the party [sic] in the plea agreement it was understood that not only the amount of P2P found at the residence but also the chemicals that would have and could have produced P2P were not readily

provable and constitute an indeterminate amount which would not affect sentencing.

In making this finding I resolve any ambiguities in favor of the defendant as I must and I observe that any other result would render that plea bargain illusory and of no force and effect and no meaning....

So ... it's what was the agreement between the Government and the defendant that governs and controls.

(R., Vol. VIII, pp. 62–63).

The final presentence report set forth a base offense level of 12 and a sentencing range of 27 to 33 months imprisonment, predicated on the "two grams or less" of methamphetamine found in various syringes at McCann's residence.

The district court subsequently sentenced McCann to concurrent terms of 33 months imprisonment on Counts II (possession of counterfeit money) and IV (possession of a measurable amount of P2P with intent to manufacture methamphetamine) and to a consecutive term of 60 months imprisonment on Count VII (possession of four firearms in connection with a drug trafficking crime). The sentences reflected the court's refusal to depart downward based on McCann's claim that he was a minor or minimal participant. The sentences also reflected an upward departure based on the court's finding that McCann obstructed justice by threatening a potential witness.

On appeal the government contends that the court erred in finding that the parties' stipulation that the exact amount of P2P "is not readily provable" precluded the court from considering the chemicals found in McCann's home in arriving at the appropriate sentence. McCann contends that the court erred (1) in refusing to depart downward, and (2) in departing upward.

### I.

The government contends that the district court erred in determining that the parties' stipulation that the exact amount of P2P possessed by McCann "is not readily provable" precluded the court from considering the chemicals found in McCann's home in arriving at an appropriate sentence.

### A.

Under U.S.S.G. 6B1.4(d), the "court is not bound by the stipulation [of facts], but may with the aid of the presentence report, determine the facts relative to sentencing." Similarly, under 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

In *United States v. Rutter*, 897 F.2d 1558, 1562 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990), we joined other circuits in holding that the district court is *required* to consider not only the drug quantities associated with the offense of conviction but also those quantities which were part of the same course of conduct or common scheme or plan as the offense of conviction:

Thus, under the Sentencing Guidelines, the district court properly considered quantities associated with not only the offense of conviction, but also those quantities which facilitated the commercial relationship between the defendant as drug dealer and the DEA agent as drug purchaser.... We agree with those circuits which have indicated that *Guidelines* §§ 1B1.3(a)(2) and 3D1.2(d) require aggregation of quantities from drug offenses encompassed by § 2D1.1 'that were part of the same course of conduct or common scheme or plan as the offense of conviction,' regardless of whether the defendant was convicted of the underlying offenses pertaining to the additional amounts.

See also, *United States v. Ross*, 920 F.2d 1530, 1538 (10th Cir.1990); *United States v. Boyd*, 901 F.2d 842, 844 (10th Cir.1990).

We must hold that the court erred in finding that the stipulation precluded the court from considering the chemicals found

in McCann's home in arriving at an appropriate sentence; indeed, the court was required to consider the chemicals.

### B.

■ Our discussion of the stipulation cannot end here. As set forth, *supra,* following the stipulation that the government was not charging a specific quantity of drugs in Count IV, the parties and the district court, relying on *United States v. Crockett, supra,* proceeded under the belief that the mandatory minimum sentence under Count IV was eliminated from the court's consideration. Thereafter, McCann pled guilty to Count IV with the understanding that he would not be subject to a mandatory minimum sentence. This understanding was erroneous.

As *Rutter, supra,* makes clear, the sentencing guidelines require the district court to consider *all* relevant chemicals in sentencing, not just those chemicals charged in the indictment. Thus, the imposition of a mandatory minimum sentence under the guidelines cannot be eliminated from the court's consideration simply because a specific amount of drugs was not alleged in the indictment. Accordingly, we hold that the contrary holding in *Crockett,* a pre-guideline case, is inapposite to post-guideline cases. *See, e.g., United States v. Ware,* 897 F.2d 1538, 1542–43 (10th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 2629, 110 L.Ed.2d 649 (1990).

■ Given this holding, we conclude that McCann was subject to the mandatory minimum sentence under Count IV and that the court was required to so advise him. The court, however, erroneously relying on *Crockett,* failed to do so. This failure violated Fed.R.Crim.P., Rule 11, 18 U.S.C.A., and undermined the voluntariness of McCann's guilty plea:

> [T]o determine whether a plea is voluntary, a court must assess whether the defendant fully understood the consequences of the plea....
>
> Both the attorneys and the court have a duty to apprise the defendant of the consequences of the plea and ensure that it is voluntary. If these duties are not

discharged, the defendant is not 'fully aware' of the consequences of the plea and it is therefore involuntary. The court's duties are delineated by Rule 11(c) of the Federal Rules of Criminal Procedure. With respect to advising the defendant as to his potential sentence in a guidelines case, the court's obligation under Rule 11 is to advise the defendant of the mandatory minimum and maximum penalties for the crime committed and that the guidelines will govern sentencing....

*United States v. Williams,* 919 F.2d 1451, 1456 (10th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1604, 113 L.Ed.2d 667 (1991).

Inasmuch as McCann was not fully aware of the consequences of his plea, we hold that he entered an involuntary guilty plea. McCann's belief, and that of the government and the court, that the stipulation prevented the court from considering the mandatory minimum sentence on Count IV was erroneous. As such, it rendered his plea involuntary. *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970) (a plea of guilty must stand unless induced by misrepresentations including unfilled or unfulfillable promises); *United States v. Hand,* 913 F.2d 854, 856 (10th Cir.1990) (where the government obtains a guilty plea predicated in any significant degree on a promise or agreement with the prosecuting attorney, such promise must be fulfilled to maintain the integrity of the plea).

We hold that McCann's guilty plea was involuntary. It was based on the erroneous assumption that the stipulation precluded the court from considering the other chemicals and the mandatory minimum sentence. Moreover, inasmuch as the district court fundamentally erred when it accepted McCann's involuntary guilty plea, McCann is entitled to plead anew. *McCarthy v. United States,* 394 U.S. 459, 463–64, 89 S.Ct. 1166, 1169–70, 22 L.Ed.2d 418 (1969).

### II.

McCann contends that the district court erred in refusing to depart downward in

sentencing him under Count II and in enhancing his sentence upward two levels for obstruction of justice under U.S.S.G. § 3C1.1. Although not necessary for our disposition, we review these allegations of error for the benefit of the court upon remand.

### A.

▮ McCann argues that a "[d]ownward departure is particularly compelling under U.S.S.G. § 3B1.2, because his role in the Count II offense was extremely limited." (Opening Brief of Defendant–Cross Appellee at p. 20). § 3B1.2 [2] does not provide a downward "departure" but, rather, a downward adjustment in computing the offense level. McCann contends that he is entitled to at least a two-point reduction as a minor participant, if not a four-point reduction as a minimal participant, because his role in the Count II offense was merely that of a courier, he did not know how to print counterfeit notes, he was not a major distributor, and he derived no cognizable profit from the illicit activity.

We review sentences imposed under the Sentencing Guidelines pursuant to 18 U.S.C. § 3742 and we are to determine if the sentence " '(1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; (3) is outside the applicable guideline range ...; or (4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.' " *United States v. Havens,* 910 F.2d 703, 704 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 687, 112 L.Ed.2d 678 (1991), (quoting, 18 U.S.C. § 3742(e) (1988)).

▮ The district court's application of the sentencing guidelines to the facts of a particular case is entitled to due deference and the court's factual findings will not be reversed unless clearly erroneous. *United States v. Urbanek,* 930 F.2d 1512 (10th

Cir.1991). A defendant has the burden of showing, by a preponderance of the evidence, that he is entitled to a downward adjustment. *United States v. Caruth,* 930 F.2d 811, 812 (10th Cir.1991); *United States v. Maldonado–Campos,* 920 F.2d 714, 717 (10th Cir.1990). A district court's finding that a defendant is a minor (or minimal) participant under § 3B1.2 and entitled to an offense level reduction is a finding of fact which we must accept unless clearly erroneous. *United States v. Arredondo–Santos,* 911 F.2d 424, 425 (10th Cir.1990).

Applying these standards to the facts herein, we hold that the district court's refusal to adjust downward was not clearly erroneous. A defendant's status as a courier does not necessarily mean that he was a minor participant. *United States v. Pelayo–Munoz,* 905 F.2d 1429, 1430 (10th Cir. 1990). Section 3B1.2 turns on culpability, not courier status. *Id.* at 1431 (quoting *United States v. Buenrostro,* 868 F.2d 135, 138 (5th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990)). We agree with the amended presentence report of February 6, 1990, that "[i]nasmuch as Mr. McCann was the *only* individual charged in these matters [i.e., Count II], no adjustment [downward] ... is given for his role in the offense." (R., Supp.Vol. I, Presentence Report, p. 10) (emphasis supplied).

### B.

▮ McCann contends that the district court erred in enhancing his sentence upward two levels for obstruction of justice under U.S.S.G. § 3C1.1.

During McCann's sentencing hearing, Special Agent Blackhurst, a secret service agent of 21 years, related that he had interviewed one Richard (Dicki) Graves, an "informant and potential witness" in McCann's case. (R., Vol. VIII, pp. 3–4). During the interview, Graves had provided

---

**2.** § 3B1.2 provides in part:

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

Agent Blackhurst with several letters which McCann had written and which he (Graves) was concerned about.

Within one letter, McCann wrote that "the government has done a pretty good job of protecting Dicki. I have been every day tring [sic] to get at him for what he has done to me." (R., Supp. Addendum, p. 12). In another letter, McCann wrote that "I have sent out copies of this paper to people I no [sic] here & with any luck maybe someone out there hates rats and will punish Dicki and his family for me." *Id.* at 11.

The district court subsequently found McCann guilty of obstructing justice. (R., Vol. VIII, p. 64; Vol. IX, p. 13). In so doing, the court rejected McCann's contentions that he was not attempting to coerce Graves, that he had written the letters when he was disappointed and frustrated, and that what he had actually meant by the letters was that "he hoped to see Graves incarcerated and suffer the same kind of financial and emotional difficulties that confronted him." (Opening brief of MCann, p. 23).

 We review a district court's determination to enhance a sentence for obstruction of justice under § 3C1.1 only for clear error. *United States v. Williams,* 897 F.2d 1034, 1041 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991). The degree of upward adjustment in the base offense level for obstruction of justice is a matter within the sound discretion of the sentencing court. *United States v. St. Julian,* 922 F.2d 563, 571 (10th Cir.1990).

Conduct which may provide a basis for applying § 3C1.1 to enhance a sentence includes "threatening, intimidating, or otherwise unlawfully attempting to influence a co-defendant, witness, or juror, directly or indirectly." U.S.S.G. § 3C1.1 comment (n. 1(d)); *United States v. Reid,* 911 F.2d 1456, 1463 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991). "Threatening a witness before the witness testifies and prior to conviction and sentencing plainly is within the scope of § 3C1.1." *United States v. Reid, supra,*

911 F.2d at 1463, n. 6 (quoting *United States v. Rivera,* 879 F.2d 1247, 1253–54 (5th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 554, 107 L.Ed.2d 550 (1989)). We hold that the district court's determination to enhance McCann's sentence for obstruction of justice was not clearly erroneous.

McCann's convictions are REVERSED. The case is REMANDED with direction that the district court permit McCann to withdraw his plea of guilty and plea anew to the nine counts set forth in the superseding indictment.