951 F.2d 1261
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Gene O. HARPSTER, M.D., Defendant-Appellant.
 Nos. 90-3339, 91-3104.
 United States Court of Appeals, Tenth Circuit.
 Dec. 13, 1991.
 
 Before LOGAN, JOHN P. MOORE and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 LOGAN, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.
 
 
 2
 In No. 90-3339, defendant Gene Harpster, M.D. appeals from a judgment of the district court entered following a jury's finding of guilt as to eight counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342.[1] In No. 91-3104, defendant appeals from the district court's order denying his motion for a new trial.
 
 
 3
 Defendant was convicted of knowingly using the United States mails to defraud the Atchison, Topeka and Santa Fe Employees' Benefit Association (EBA) which provides health care benefits for active and retired railroad employees. Defendant was charged with submitting insurance claims to EBA for services rendered to patients who did not keep their scheduled appointments. Defendant was sentenced to twelve months' imprisonment on each count to be served concurrently and to supervised release for three years on three counts. A fine of $3,000 on one count, restitution of $795, and a $400 special assessment were imposed.
 
 
 4
 In No. 90-3339, defendant argues (1) there was insufficient evidence to convict him; (2) the court erred in admitting rebuttal testimony; and (3) the court erred in finding defendant obstructed justice, thus permitting a two point enhancement at sentencing.
 
 
 5
 Defendant was charged with violations of 18 U.S.C. §§ 1341 and 2.[2] "In order to convict a defendant under 18 U.S.C. § 1341 (1982) the government must prove two elements: (1) a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises; and (2) use of the United States mails for the purpose of executing the scheme." United States v. Cardall, 885 F.2d 656, 679 (10th Cir.1989). Defendant argues only that the government failed to meet the first element because it produced no evidence he had schemed to defraud EBA.
 
 
 6
 We will hold evidence sufficient to convict "if it is such that when considered in the light most favorable to the verdict, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Nall, --- F.2d ----, Nos. 90-2220, 2221, 2271, slip op. at 10 (10th Cir. Nov. 12, 1991) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 7
 The government presented evidence that EBA had become concerned about defendant's billing practices by early 1988 because insurance claims submitted by defendant showed excessive utilization of his services with charges which were the highest in the EBA membership area despite the fact that defendant did not file hospitalization claims on any patients. Tr. at 27, 30, 32.
 
 
 8
 The government also presented testimony from nine EBA members for whom claims had been submitted. The employees testified they did not remember making an appointment on the date charged. In addition, several of the employees' time sheets showed they were at work during the charged time. Id. at 130-187.
 
 
 9
 One of defendant's former employees, Richard Hamm, testified that defendant told him to increase billing charges on EBA patients. Id. at 244. He testified that "no show" patients were billed because time had been allotted for the patient. Id. at 252. Further, it "was a normal practice to go through patient lists, and a patient who had not been in for a certain amount of time would go ahead and the doctor would write down what the patient needed to be scheduled for, and then we were to call the patient and schedule them for those particular tests." Id. at 253. Hamm discussed exhibits of flow sheets on several patients who had not kept appointments, but for whom insurance claim forms were filed. Id. at 255-274. Hamm testified that defendant reviewed the billing. Id. at 307.
 
 
 10
 Another former employee, Kathleen Kirkham, testified that defendant directed her to send billings for patients who missed appointments. Id. at 340. "I noticed that that person [a no show] was indeed charged, and doctor made the comment that his time was scheduled and would be paid for." Id. at 341.
 
 
 11
 The government presented both witness testimony and records and insurance claims to support its case. Viewed in the light most favorable to the verdict, we hold this evidence was sufficient to enable the jury to find, beyond a reasonable doubt, that the government had proved defendant had schemed to defraud EBA.
 
 
 12
 Next, defendant asserts the district court erred in permitting the government to present rebuttal testimony which defendant argues was not used to rebut his case, but rather was used to impeach his testimony and, therefore, was "wholly cumulative and repetitive of testimony adduced in the government's case-in-chief." Appellant's Br. at 15.
 
 
 13
 "The admission of rebuttal testimony rests within the sound discretion of the trial judge." United States v. Willis, 890 F.2d 1099, 1104 (10th Cir.1989). In its case-in-chief, the government presented the evidence discussed above. Defendant then testified he never instructed anyone in the office to bill for patients who missed appointments except in unusual circumstances. Tr. at 423. Defendant also denied that he devised a scheme to defraud EBA, id. at 424, intended to overutilize laboratory or x-ray services, id. at 438, or instructed anyone to inflate bills or to bill for services not rendered, id. at 423-24.
 
 
 14
 The government requested rebuttal to refute defendant's testimony. Id. at 448-49. Arguably the government could have presented the rebuttal testimony during its case-in-chief, but " ' "the fact that [the evidence] might have been offered in chief does not preclude its admission in rebuttal." ' " Benedict v. United States, 822 F.2d 1426, 1428 (6th Cir.1987) (quoting Martin v. Weaver, 666 F.2d 1013, 1020 (6th Cir.1981), cert. denied, 456 U.S. 962 (1982) (quoting National Sur. Corp. v. Heinbokel, 154 F.2d 266, 268 (3d Cir.1946))). Further, after hearing the rebuttal testimony, the district court dismissed six of the pending charges. The district court's decision to allow rebuttal was not an abuse of discretion.
 
 
 15
 Finally, defendant argues the district court erred in assessing a two-point enhancement for obstruction of justice, pursuant to the United States Sentencing Guidelines (U.S.S.G.) § 3C1.1. "We review a district court's determination to enhance a sentence for obstruction of justice under § 3C1.1 only for clear error. The degree of upward adjustment in the base offense level for obstruction of justice is a matter within the sound discretion of the sentencing court." United States v. McCann, 940 F.2d 1352, 1360 (10th Cir.1991) (citation omitted).
 
 
 16
 Conduct which may provide a basis for obstruction of justice enhancement includes "procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding." U.S.S.G. § 3C1.1 Application Note 3(d) (1990). Hamm testified he was present when an FBI agent served defendant a subpoena requesting patient flow sheets. At that time, Hamm identified the flow sheets to both defendant and the FBI agent. Later, defendant told his wife not to copy the flow sheets because "[h]e didn't know exactly what they were requesting." Tr. at 295. "He said he didn't know what a flow sheet was. He didn't know what they mean by the word flow sheet." Id.
 
 
 17
 Defendant admitted telling his wife not to turn the documents over to the FBI: "My wife wanted to start copying a mountain of paper work and it was absolutely impossible to do. [The FBI agent] did not qualify specifically to me what he wanted with the flow sheet.... I told her [defendant's wife] that there was no way we could pursue that." Id. at 434.
 
 
 18
 The court found enhancement appropriate because the FBI agent had "specifically advised ... and pointed to the information in the file that they wanted on the particular occasion, and after doing so ... that was when this was refused." Tr. of Hr'g on Motions and Sentencing at 14. The court clearly identified the incident on which it relied for enhancement. This incident reflected defendant's decision not to permit his wife to comply with the subpoena, thereby concealing evidence from the grand jury. The district court's decision to enhance defendant's sentence for obstruction of justice was not clearly erroneous.
 
 
 19
 In No. 91-3104, defendant argues the district court erred in denying his motion for a new trial. In his motion, defendant alleged[3] newly discovered evidence in that he had discovered that the government's principal witnesses against him, Hamm and Kirkham, embezzled insurance proceeds from him. Defendant asserted that Kirkham had embezzled the proceeds of checks from an insurer other than EBA. He also alleged that Hamm had endorsed and cashed six checks from EBA without his knowledge or approval. Defendant further alleged he had just discovered Hamm had prior convictions for theft and burglary.
 
 
 20
 At the hearing on the motion, Kirkham testified defendant had given her insurance company checks sent as reimbursement for medical care she had received from defendant for which defendant had filed insurance claims. Defendant gave her the checks because "[i]t was just understood that our medical care was free." Tr. of Hr'g on def.'s motion for a new trial held February 22, 1991, at 41.
 
 
 21
 Hamm admitted endorsing the checks at issue, but stated defendant had given them to him as a bonus. Id. at 58. Hamm also testified he did not tell defendant about his criminal record, but "it was common knowledge at the school that I attended and those records were made available to him." Id. at 57-58.
 
 
 22
 The requirements for granting a motion for a new trial in a criminal case based on newly discovered evidence are well established. The alleged newly discovered evidence must be more than impeachment or cumulative; it must be material to the issues involved; it must be such that it would probably produce an acquittal; and a new trial is not warranted if the new evidence is such that, with reasonable diligence, it could have been discovered and produced at the original trial. The motion is not regarded with favor and should be granted only with great caution, being addressed to the sound discretion of the trial court. The decision of the trial court will not be disturbed unless there has been an abuse of such discretion.
 
 
 23
 United States v. Sutton, 767 F.2d 726, 728 (10th Cir.1985) (citations omitted).
 
 
 24
 Newly discovered evidence that is merely impeaching generally will not support granting a new trial, Mesarosh v. United States, 352 U.S. 1, 9 (1956). If, however, "it appears that had the impeaching evidence been introduced, it is likely that the jury would have reached a different result," it may justify a new trial. United States v. Davila, 428 F.2d 465, 466 (9th Cir.1970).
 
 
 25
 The district court found that although the evidence might have caused jurors "to more seriously question the veracity of Hamm and/or Kirkham," district ct.'s order of March 11, 1991, at 7, the court was "unable to conclude that the introduction of such evidence would probably produce an acquittal," id. at 6. The court noted in particular the "abundant evidence supporting defendant's guilt," id. at 7 n. 6, and the "questionable credibility" of defendant's own testimony, id. at 7.
 
 
 26
 When the credibility of both the witnesses and the defendant is an issue, we give strong deference to the district court's determination of that credibility. Furthermore, other evidence supports Hamm's and Kirkham's testimony. Evidence was received that defendant had the highest billing of any doctors filing claims with EBA, despite having the lowest number of EBA patients and no hospital privileges. Other strong circumstantial evidence included testimony of former patients who could not remember making appointments for the charged office visits which, combined with records of those patients' work schedules as reflected in their time sheets, suggested they could not have appeared for the appointments. Thus, the record includes ample support for the district court's finding that the newly discovered evidence was not the type that would probably produce an acquittal in a new trial. The district court did not abuse its discretion in denying defendant's motion.
 
 
 27
 The judgment of the United States District Court for the District of Kansas is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Defendant's motion for acquittal was granted at the end of defendant's case as to six other charges of mail fraud. The monetary loss on all fourteen counts was $228,684.64
 
 
 [2]
 Section 1341 provides that whoever, "having devised ... any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses ..., places in any post office ... any matter or thing whatever to be sent or delivered by the Postal Service, ... shall be fined not more than $1,000 or imprisoned not more than five years, or both."
 
 
 [3]
 Defendant did not include a copy of his motion in his appendix. Therefore, we accept the district court's characterization of defendant's issues as correct