956 F.2d 279
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Dan L. WILLIAMS, Defendant-Appellant.
 No. 90-2104.
 United States Court of Appeals, Tenth Circuit.
 Feb. 25, 1992.
 
 Before BALDOCK and BARRETT, Circuit Judges, and DAUGHERTY*, District Judge.
 ORDER AND JUDGMENT**
 BARRETT, Senior Circuit Judge.
 
 
 1
 Dan Williams (Williams) appeals his jury convictions of one count of conspiracy to possess with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841, 841(1)(1), and (b)(1)(B) and two counts of possession with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).
 
 
 2
 Williams and thirteen co-defendants were charged in an eight-count indictment with smuggling marijuana into the United States from Mexico. The parties stipulated that the amount of marijuana was 781 pounds. (R., Vol. III at p. 4). The government's chief witness was James Goodin (Goodin) who testified in exchange for immunity and placement in the witness protection program.
 
 
 3
 Goodin first met one Carlos Dominguez in late 1986. Dominguez hired Goodin to recruit a ground crew to help unload airplane loads of marijuana flying into the United States from Mexico. Goodin recruited Williams, whom he had known for approximately two years, to be part of a ground crew. Williams participated in receiving two shipments of marijuana in the State of New Mexico. Williams' truck, which had been altered to avoid detection by law enforcement officials, was also used to transport marijuana.
 
 
 4
 During the second shipment, Custom agents, alerted to the incoming shipment, moved in and arrested some of the defendants, including Williams, who had tried to escape in his truck. Goodin and several others did manage to escape. Following his arrest, Williams was released from custody, and he subsequently gave a statement to Customs agents.
 
 
 5
 A jury trial of nine co-defendants commenced in April, 1989. Williams, however, was not among the defendants because he had fled from the United States to Mexico where, using an alias, he worked as a driver for Dominguez. He lived in Mexico as a fugitive for over two and one-half years. Following his apprehension by Mexican authorities, Williams was turned over to the United States Marshal Service and returned to the United States for trial.
 
 
 6
 Prior to trial, Williams moved to dismiss on the grounds that he had complied with an agreement to cooperate with the government. Williams also moved to suppress a statement he had given in conjunction with his alleged agreement. Both motions were denied.
 
 
 7
 At trial, the government presented evidence that Williams actively participated in the smuggling operation and that Goodin was not a cooperating witness at the time he hired Williams. The government also presented evidence that no agreement was ever reached with Williams because he had fled to Mexico to avoid apprehension and was not returned until shortly prior to his trial.
 
 
 8
 Williams testified, inter alia, that Goodin had contacted him to be an off-loader for the Dominguez organization; he had received $10,000 for his work; he had agreed to cooperate with the government in exchange for immunity from prosecution; as a result of his agreement, he underwent a debriefing by Customs agents during which he gave a complete statement of his involvement and the facts as he knew them; his agreement with the government was reduced to writing in a letter from his attorney to the Assistant United States Attorney assigned to the case; and Goodin had taken him to Mexico to meet Dominguez, after which it was decided that he would remain in Mexico with Dominguez. Williams did not introduce the letter from his attorney to the Assistant United States Attorney detailing his agreement with the government.
 
 
 9
 Williams' request for an entrapment instruction was denied by the court. Williams was convicted on three counts as charged.
 
 
 10
 On appeal, Williams contends that the trial court erred in: not dismissing the indictment as to him based on his agreement with the government; not suppressing his pre-trial statement; not giving his requested entrapment instruction; considering a firearm in calculating his sentence.
 
 I.
 
 11
 Williams contends that the court erred in not dismissing his indictment based on his agreement with the government. A trial court's order granting or denying a motion to dismiss an indictment is reviewable for abuse of discretion. United States v. Derr, 726 F.2d 617, 619 (10th Cir.1984).
 
 
 12
 Williams argues that the government breached its agreement not to prosecute him in exchange for his cooperation and that the indictment against him should have been dismissed. He argues that his agreement with the government was reduced to writing in a letter from his attorney to an Assistant United States Attorney. Our record on appeal does not contain any such letter.
 
 
 13
 The government presented evidence that although it tried to negotiate a plea agreement with Williams, Williams fled to Mexico before any agreement could be negotiated. The government points out that Williams acknowledged at trial that he understood that cooperating with the government would require him to testify before a grand jury or at trial, (R., Vol. III, at pp. 128-29), and that notwithstanding this understanding, he fled to Mexico without so testifying. Id. at p. 131. During oral arguments to this court, counsel for the government stated that the government had never received or seen any letter from Williams' counsel memorializing an agreement between Williams and the government.
 
 
 14
 Under these circumstances, we hold that the trial court's denial of Williams' motion to dismiss did not constitute an abuse of discretion.
 
 II.
 
 15
 Williams contends that the court erred in not suppressing his pre-trial statement. In reviewing the evidentiary rulings of the trial court, we may reverse only for an abuse of discretion. United States v. Alexander, 849 F.2d 1293, 1301 (10th Cir.1988).
 
 
 16
 Prior to trial, Williams filed a motion in limine to prevent the statement he had given Customs agents from being introduced into evidence. However, before the court had ruled on the motion, the prosecutor and defense counsel stipulated that the statement would not be used in the government's case-in-chief.
 
 
 17
 Defense counsel subsequently elicited the statement in developing Williams' breach of agreement argument. Thereafter, the trial court allowed the prosecutor to inquire about the existence of the statement for the limited purpose of refuting Williams' allegation that the government had reneged on its agreement.
 
 
 18
 We hold that the district court did not abuse its discretion in allowing the prosecutor to inquire about the existence of the statement, inasmuch as Williams first elicited the statement in developing his breach of agreement contention.
 
 III.
 
 19
 Williams contends that the court erred in not giving his proffered entrapment instruction. Whether there is sufficient evidence to constitute a triable issue of entrapment is a question of law, reviewable on a de novo basis. United States v. Fadel, 844 F.2d 1425, 1433 (10th Cir.1988).
 
 
 20
 Williams argues, citing to United States v. Busby, 780 F.2d 804, 806 (9th Cir.1986) and United States v. Brandon, 633 F.2d 773, 778 (9th Cir.1980), that an entrapment instruction must be given "if the evidence rationally supports inferences of the defendant's inducement by government agents and if [sic] the defendant's non-predisposition to commit the crime charged." (Appellant's Brief in Chief at p. 14). Williams argues that the evidence of his entrapment included: the government's advance notice of the drop; the fact that Goodin was a government informer; that Goodin was able to drive through the ring of government agents without being arrested; that Goodin had recruited, trained, and equipped him; and he had no prior involvement in any manner with the drug business.
 
 
 21
 We hold that the court did not err in refusing to instruct the jury on entrapment. The government's evidence established that Goodin was not a government agent at the time Williams joined the conspiracy or at the time of Williams' participation in the two smuggling operations. Goodin opted to cooperate with the government during mid-1988, approximately seven months after the second unloading, during which Williams and a number of the other co-defendants were arrested.
 
 IV.
 
 22
 Williams contends that the court erred in considering a loaded pistol in calculating his appropriate offense level under the sentencing guidelines. We must give due deference to the district court's application of the guidelines to the facts. United States v. Coleman, 947 F.2d 1424, 1426 (10th Cir.1991). A district court's factual findings relative to the application of the guidelines will not be reversed unless clearly erroneous. United States v. McCann, 940 F.2d 1352, 1359 (10th Cir.1991).
 
 
 23
 Williams argues that since he threw the weapon away prior to his arrest, he showed that "the firearm was not intended to be used as an offensive weapon for the specific underlying criminal act" and that "he had not intended to use the firearm in a violent manner." (Appellant's Brief In Chief at pp. 16, 18). Thus, according to Williams, the firearm should not have been considered in increasing his offense level under the guidelines.
 
 Williams' Presentence Report provided:
 
 24
 Offense reports show Williams possessed a loaded handgun at the time of arrest. He admitted to possession, however, denied the firearm was possessed in connection with the offense conduct. [The] Commentary Application Notes ... show that any firearm present should be applied because of the increased danger of violence, unless it is clearly evident that it is not connected with the offense. There is no clear showing that the firearm was possessed for other reasons.
 
 
 25
 (R., Vol. II, Presentence Report at pp. 9-10.)
 
 
 26
 Prior to sentencing Williams, the district court specifically found:
 
 
 27
 The court finds that there is no need for an evidentiary hearing as there are no disputed facts.... The court in arriving at an appropriate sentence has considered the quantity of marijuana, the ongoing nature of the offense conduct, and with the defendant's ownership of the truck which was altered in an attempt to avoid detention by law enforcement officers in the smuggling operation. In addition, it is noted that the defendant was a fugitive for over two years....
 
 
 28
 * * *
 
 
 29
 * * *
 
 
 30
 I further find that as to the weapons enhancement that the weapon was available for use during the commission of the crime and that a two-point enhancement is proper and I have included that in the sentence.
 
 
 31
 (R., Vol. IV at pp. 181, 183).
 
 
 32
 We hold that the district court's consideration of the loaded pistol in calculating Williams' appropriate offense level was not clearly erroneous.
 
 
 33
 AFFIRMED.
 
 
 
 *
 The Honorable Frederick A. Daugherty, Senior Judge, United States District Court for the Northern District of Oklahoma, serving by designation
 
 
 **
 This Order and Judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3