**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

**Filed 7/31/96**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

LUIS ALVAREZ,

    Defendant-Appellant.

No. 95-2132
(D.C. No. CR-94-435-SC)
(New Mexico)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **BRORBY**, Circuit Judge

Luis Alvarez was charged in a one-count indictment with possession with an intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2, aiding and abetting. Prior to trial, Alvarez filed a motion to suppress the use at trial of the eighty-two pounds of cocaine taken by Agents of the United States Border Patrol from the trunk of the vehicle Alvarez was driving when

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3

he stopped at a border checkpoint located at Las Cruces, New Mexico. At the suppression hearing, three Border Patrol Agents testified. No one else testified. At the conclusion of the hearing, the district court denied the motion from the bench. Shortly thereafter, Alvarez entered a plea of guilty pursuant to a written plea agreement, wherein, *inter alia,* Alvarez reserved the right to appeal the denial of his motion to suppress. After a pre-sentence investigation and report, the district court sentenced Alvarez to a term of 262 months imprisonment. Alvarez filed a timely notice of appeal.

On appeal, Alvarez raises three matters: (1) the district court erred in denying his motion to suppress; (2) the district court erred in sentencing him as a "career offender" under U.S.S.G. § 4B1.1; and (3) the district court erred in refusing to decrease his base offense level by 2 levels based on his "minor participation" in the drug operation, as permitted by U.S.S.G. § 3B1.2. Some background will put these matters in focus.

The Facts

As indicated, Alvarez entered a so-called conditional plea of guilty under Fed. R. Crim. P. 11(2). There was no trial. Accordingly, the background facts are based on the testimony given by the three Border Patrol Agents at the hearing on the motion to suppress and the pre-sentence report. Jumping ahead, when Alvarez and his wife stopped at a border patrol checkpoint at Las Cruces, New Mexico, they were en route from Los Angeles, California, to New York City, New York. Alvarez was serving as a "courier", transporting eighty-two pounds of cocaine, for which service he was to be paid $15,000.

On June 30, 1994, Border Patrol Agent Garth Rogers ("Rogers") was working at a border patrol checkpoint located on Interstate 25 at Las Cruces, New Mexico. At about 5:50 p.m. on that date, Alvarez pulled his vehicle into the primary inspection area, and was met by Rogers. The vehicle had California license plates. At about 6:30 p.m., 40 minutes later, Rogers discovered about eighty-two pounds of cocaine contained in suitcases in the trunk of the vehicle Alvarez was driving. The events which occurred during that 40 minute period form the basis for Alvarez' motion to suppress.

Rogers first asked Alvarez about his citizenship status. Alvarez said he was from Miami, Florida. Rogers noted that Alvarez had a "heavy accent", and, because of that, inquired as to what country Alvarez was originally from. Alvarez told Rogers he was of Cuban descent and that he had been "paroled" into the United States from Cuba in 1980 "under the Mariel boat lift." Rogers then asked for documentation of Alvarez' claimed parole into the United States. Alvarez said that he had none. Alvarez, by way of identification, did give Rogers his social security card and a Florida driver's license.[1]

Rogers then informed Alvarez that since he had no immigration papers to document his immigration status, a computer check would be required and directed Alvarez to a secondary inspection area. Agent Jepsen ("Jepsen") then began to run a

---

[1] Alvarez' wife, Martha Tercero, was a passenger in the vehicle. She was a Nicaraguan and was in the United States on political asylum and had on her person a valid immigration form.

computer check on Alvarez. To perform such a check, the agent provides a name and date of birth or alien registration number to the sector radio dispatcher, who, in turn, enters the information in the computer to access a central office index of files containing information on immigration status.

The agents began their first computer check into Alvarez' immigration status under the only name they had been given, namely, Luis Alvarez, even though Rogers had specifically asked if Alvarez had used any other name on his immigration documents. By 6:15 p.m., the agents received the results of the computer check under that name. Those results indicated there was nothing to support Alvarez' claim of having an immigration status of being a parolee into the United States from Cuba. However, the information did indicate that Alvarez had a lengthy criminal history and had used several aliases, but that there were no outstanding wants or warrants.

About that time Jepsen learned that Alvarez' mother's name was Mera and determined that Alvarez' full name was Luis Alvarez-Mera. About 6:20 p.m., Jepsen began to make an additional computer check using the name of Luis Alvarez-Mera. A few minutes later, while Jepsen was still making his computer check, Rogers asked Alvarez what he was carrying in the trunk of his vehicle. Alvarez told him there was luggage in the trunk and opened the trunk so Rogers could look inside. At that time, while the computer check on Alvarez' immigration status was still in progress, Rogers asked Alvarez for permission to make a canine search of the vehicle. Alvarez, according

to Rogers, consented to the use of a canine.  The canine then alerted, and Rogers, after poking through the trunk, found bundles of cocaine in suitcases laying in the trunk of Alvarez' vehicle.  This occurred at about 6:30 p.m.  At about the same time the computer check under the name Luis Alvarez-Mera was negative, i.e., nothing to support, or dispute,  Alvarez' claim that he was "paroled from Cuba."

Motion to Suppress

The gist of Alvarez' motion to suppress was that although the initial stop was lawful, the ensuing detention was unlawful, and that the "consent" to a canine-search and the seizure of eighty-two pounds of cocaine from the trunk of his vehicle were the "fruit of the poisonous tree". *Wong Sun v. United States,* 371 U.S. 471 (1963).

In denying Alvarez' motion to suppress, the district court rejected the argument that at the time Alvarez gave his consent to a search of his vehicle, he was being illegally detained by the Border Patrol Agents.  In so doing, the district court spoke as follows:

> "After the referral to secondary, they started checking on this defendant's immigration status.  And it was during this continuing period of permissible and appropriate check into his immigration status, which apparently the various checks came back negative and so on, that one of the agents asked the defendant for permission to look into the trunk, and that permission was voluntarily given."

Counsel concedes, as we understand it, that it was proper for Agent Rogers to direct Alvarez to the secondary inspection area when Alvarez claimed to be a parolee from Cuba but had no documents to substantiate his claim.  As indicated, Alvarez pulled

into the primary inspection area at about 5:50 p.m. on June 30, 1994. A few minutes later Alvarez was directed to the secondary inspection area and Agent Jepsen began his computer check. Jepsen testified that at about 6:15 p.m he had received nothing from his computer check to confirm or dispute Alvarez' claim of being a Cuban parolee. The consent and search here complained of occurred at 6:30 p.m. The district court found that, at the time of the search, Jepsen was still using the computer in an effort to ascertain Alvarez' immigration status. Certainly the record supports the district court's finding.

Counsel's position on appeal is that at 6:15 p.m. on June 30, 1994, Agents Jepsen and Rogers had received information that Alvarez was, in fact, a Cuban parolee and lawfully within the United States and that detaining Alvarez beyond 6:15 p.m. was unreasonable and unlawful. Such is not our reading of the record. The testimony of Agents Rogers and Jepsen in our view supports the district court's finding that at the time of Alvarez' consent to a search of his vehicle, the computer check was still in progress.

### Career Offender

As indicated, the district court sentenced Alvarez as a "career offender" under U.S.S.G. § 4B1.1. Alvarez had two prior convictions: a 1983 conviction for possession with an intent to distribute marijuana, and a 1986 conviction for conspiracy to possess with an intent to distribute marijuana.[2] U.S.S.G. § 4B1.1 provides that the prior felony

---

[2] The presentence report indicates that Alvarez' 1983 conviction involved 7,795 pounds of marijuana and his 1986 conviction involved 25,000 pounds of marijuana.

conviction shall be for either a "crime of violence" or a "controlled substance offense." U.S.S.G. § 4B1.2 defines the terms used in U.S.S.G. § 4B1.1, and commentary note 1 thereunder states that a "controlled substance offense" includes the offense of "conspiring" to commit such offense. Counsel argues that, notwithstanding the rather clear language of the guidelines, the guidelines themselves do not comport with 28 U.S.C. § 994(h). Counsel agrees that we have considered, and rejected, this precise argument. *See United States v. Allen*, 24 F.3d 1180, 1187 (10th Cir. 1994) *cert. denied*, 115 S.Ct. 493 (1994). Counsel suggests that we reconsider and overrule *Allen,* which he says was "poorly reasoned." This we cannot do. *See United States v. Spedalieri,* 910 F.2d 707, 709, n.3, (10th Cir. 1990) (A three-judge panel is bound to adhere to and cannot overrule circuit precedent.).

<u>Minor Participation</u>

The district court refused Alvarez' request that under U.S.S.G. § 3B1.2 his base offense level be decreased by 2 levels because of his minor participation in the drug operation. A "courier" is not necessarily a minor participant because he is a "courier," *United States v. McCann,* 940 F.2d 1352, 1359 (10th Cir. 1991). In *United States v. Arredondo-Santos,* 911 F.2d 424, 426 (10th Cir. 1990) we observed that "[c]ouriers are indispensable to any drug-dealing network." All things considered, the district court's denial of Alvarez' request to decrease his base offense level by 2 levels based on his minor participation in the drug operation is not clearly erroneous, and, such being the

case, we must affirm.[3]  *McCann,* 940 F.2d at 1359.

Judgment affirmed.

Entered for the Court.

Robert H. McWilliams
Senior Judge

---

[3]  The presentence report recommended that Alvarez not be given an offense level reduction based on his role in the offense "considering the amount of cocaine Alvarez was transporting," his prior record and "the circumstances of the instant offense."