**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ervin Earl RUTTER,
Defendant–Appellant.**

No. 89–1015.

United States Court of Appeals,
Tenth Circuit.

March 13, 1990.

Kathryn Meyer, Asst. U.S. Atty. (Michael J. Norton, Acting U.S. Atty., with her on the brief), Denver, Colo., for plaintiff-appellee.

Jeffrey S. Pagliuca, of Holland, Seelen & Pagliuca, Denver, Colo., for defendant-appellant.

Before McKAY, LOGAN and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant Ervin Earl Rutter appeals from the sentence entered on his plea of guilty to distribution in excess of 500 grams of cocaine. 21 U.S.C. § 841(a)(1); 841(b)(1)(B)(ii). The maximum statutory penalty is a term of imprisonment of not less than five years nor more than forty years, a $2,000,000 fine, or both. *Id.* In the plea agreement, the parties stipulated that, pursuant to the Sentencing Guidelines, the defendant's base offense level was twenty-six. This level then was reduced by two points for defendant's acceptance of responsibility, with a resulting offense level of twenty-four. *See* United States Sentencing Comm'n, *Guidelines Manual* [hereinafter referred to as *Guidelines*] §§ 2D1.1 (less than two kilograms of cocaine), 3E1.1 (acceptance of responsibility) (1988). Accordingly, the guideline range was fifty-one to sixty-three months. *Id.* at ch. 5.

Relying upon information contained in the presentence report, the trial court applied the Sentencing Guidelines in effect as of the date of the relevant conduct (July–

August 1988) and determined that more than two kilograms of cocaine was involved, thereby indicating a base offense level of 28, not 26. The court then added two levels, finding that defendant had a supervisory role in the offense, namely, the use of his codefendant Thomas Shelton as a "mule" in obtaining the cocaine from a distant source. *Guidelines* § 3B1.1. Finally, the court deducted two levels, finding that defendant had accepted responsibility for his conduct by pleading guilty and in his conversations with the probation officer. *Id.* § 3E1.1(a). As calculated by the trial court, the resulting offense level was 28 with a guideline range of seventy-eight to ninety-seven months. *Id.* ch. 5.

This discrepancy between the parties' stipulation and the sentence actually imposed is largely the subject of this appeal. Defendant contends that the district court erred in computing the base offense level by considering amounts of cocaine encompassed in other counts to which defendant did not plead guilty. Defendant also contends that the district court's characterization of him as a supervisor in this cocaine transaction is erroneous. Pursuant to Fed.R.Crim.P. 32, defendant also suggests that the district court's findings are insufficient concerning the amount of cocaine involved and defendant's role in this transaction. Finally, defendant argues that application of the sentencing guidelines deprived him of due process. Our jurisdiction to review this sentence arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We find no merit to defendant's contentions and affirm, but remand to the district court so it may accomplish the ministerial task of attaching its findings concerning disputed factual issues to the presentence report.

## I.

We review the factual findings of the district court under the clearly erroneous standard and while we give due deference to the district court's application of the sentencing guidelines to the facts, when that application involves contested issues of law, we review *de novo*. 18 U.S.C. § 3742(e); *United States v. Kirk*, 894 F.2d 1162, 1163 (10th Cir.1990); *United States v. Smith*, 888 F.2d 720, 723 (10th Cir.1989). We recently decided that the quantum of proof required for factual determinations under the Sentencing Guidelines is a preponderance of the evidence and the burden of proof generally is allocated to the government for sentence increases and to the defendant for sentence decreases. *Kirk*, at 1164.

## A.

Defendant's first contention raises the legal issue of what quantity of drugs the district court may consider when imposing sentence. According to the defendant, the district court could only consider the amount of cocaine (some 1.887 kilograms)[1] associated with the count in which defendant admitted guilt. Under this argument, the district was not permitted to consider the quantities (some 116.94 grams)[2] that defendant admitted were associated with other counts later dismissed given the plea agreement. Aggregating these amounts puts the quantity of cocaine involved slightly in excess of two kilograms.

The defendant reasons that the district court may only select the guideline section

---

**1.** Immediately before he was arrested, defendant was in the process of selling the undercover agent two kilograms of cocaine less four ounces, or 2000 grams less 4(28.35 grams) or 1,886.60 grams. *See Guidelines*, Measurement Conversion Table at 2.45.

**2.** Defendant admitted to the probation officer that, prior to defendant's arrest, defendant sold the undercover agent approximately (1) one-eighth of an ounce (an "eight ball") of cocaine or 3.54 grams for $200 and (2) four ounces or 113.40 grams of cocaine for $4,000. According to the affidavit of the DEA agent supporting the complaint, the agent purchased (1) 26 grams for $200 and (2) 161 grams for $4,000; somewhat greater quantities than relied upon by the district court. These facts would establish a sufficient factual basis for defendant's plea and resulting sentence. The district court's determination that there was a factual basis for the plea, Fed.R.Crim.P. 11(f), is not clearly erroneous. *See United States v. Gaber*, 745 F.2d 952, 955 (5th Cir.1984).

applicable to the offense of conviction, absent a plea agreement establishing a more serious offense. Therefore, the district court likewise is precluded from considering conduct described in other counts or offenses contained in the indictment in selecting the base offense level, absent a plea agreement establishing such conduct. Defendant is confusing the legal effect of pleading to one offense, but stipulating, as part of the plea agreement, to facts which establish a more serious offense under *Guidelines* § 1B1.2(a), with the legal effect of pleading to one offense, and admitting other facts subsequent to the plea agreement which may be used to determine relevant conduct in selecting the base offense level for the pled offense. When the government and defendant, as part of the plea agreement, stipulate to facts which establish a more serious offense, the district court may apply the guideline section applicable to the stipulated offense. *Guidelines* § 1B1.2(a). "But once the Government agrees to a plea bargain without extracting such an admission, facts admitted by the defendant to shorten or obviate a sentencing hearing do not establish a 'stipulated offense' within the meaning of section 1B1.2(a)." *United States v. Guerrero*, 863 F.2d 245, 248 (2d Cir.1988). Those admitted facts do establish, however, relevant conduct under *Guidelines* §§ 1B1.2(b) & 1B1.3(a), which will be used in determining the appropriate guideline range for the statutory offense to which the defendant pled guilty. *Guerrero*, 863 F.2d at 248–49.

This is not a case in which the defendant stipulated to a more serious offense than the offense of conviction and the district court then applied the sentencing guideline for the more serious offense, *Guideline* § 1B1.2(a), limited only by the statutory maximum for the offense of conviction. *See, e.g., United States v. Strong*, 891 F.2d 82, 83–85 (5th Cir.1989); *United States v. Garza*, 884 F.2d 181, 183–84 (5th Cir.1989). Rather, the district court selected the guideline section which deals with the offense of conviction; here, *Guideline* § 2D1.1 which pertains to trafficking in drugs. Defendant does not quarrel with

the district court's selection of § 2D1.1 as the offense guideline section most applicable to the offense of conviction. *See Guidelines* § 1B1.2(a).

### B.

The district court is required first to select the applicable guideline section. *Id.* § 1B1.1(a). The Guidelines then instruct the court to determine the applicable base offense level, § 1B1.1(b), which is an important determinant of the guideline range: "After determining the appropriate offense guideline section pursuant to [§ 1B1.2(a) ], determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct)." *Id.* § 1B1.2(b). Section 1B1.3 indicates that, in determining the guideline range for distribution of cocaine, the district court was not restricted only to the quantity associated with the offense of conviction. In determining the guideline range applicable to this drug offense, which would require the grouping of multiple counts under § 3D1.2(d), relevant conduct includes "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Guidelines*, § 1B1.3(a)(2).

We turn next to the commentary to the Guidelines, which we consider essential in correctly interpreting and uniformly applying the guidelines on a national basis. 18 U.S.C. § 3553(a)(5); Fed.R.Crim.P. 32(c)(2)(C); *Guidelines* § 1B1.7; *United States v. Anderson*, 895 F.2d 641, 647 (9th Cir.1990) (Kozinski, J., dissenting) (commentary is an integral portion of the Guidelines and is entitled to more deference than legislative history or other secondary source); *United States v. Smeathers*, 884 F.2d 363, 364–65 (8th Cir.1989); *United States v. Ofchinick*, 877 F.2d 251, 257 (3rd Cir.1989). The commentary to the Guidelines could not be any clearer: "[I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction."

*Guidelines,* commentary to § 1B1.3 at 1.19. *Accord id.,* commentary to § 2D1.1, application n. 11 ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level.").

Thus, under the Sentencing Guidelines, the district court properly considered quantities associated with not only the offense of conviction, but also those quantities which facilitated the commercial relationship between the defendant as drug dealer and the DEA agent as drug purchaser.[3] In *United States v. Shorteeth,* 887 F.2d 253, 255 (10th Cir.1989), we recognized that overall quantity of drugs is used in computing the base offense level. We agree with those circuits which have indicated that *Guidelines* §§ 1B1.3(a)(2) and 3D1.2(d) require aggregation of quantities from drug offenses encompassed by § 2D1.1 "that were part of the same course of conduct or common scheme or plan as the offense of conviction," regardless of whether the defendant was convicted of the underlying offenses pertaining to the additional amounts. *United States v. White,* 888 F.2d 490, 492–93, 496–501 (7th Cir.1989); *United States v. Ykema,* 887 F.2d 697, 699–700 (6th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990); *United States v. Allen,* 886 F.2d 143, 144–45 (8th Cir.1989); *United States v. Williams,* 880 F.2d 804, 805–06 (4th Cir. 1989); *United States v. Fernandez,* 877 F.2d 1138, 1141–42 (2d Cir.1989); *United States v. Wright,* 873 F.2d 437, 440 (1st Cir.1989); *United States v. Taplette,* 872 F.2d 101, 105 (5th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989); *Guerrero,* 863 F.2d at 249 (2d Cir.); *see also United States v. Fox,* 889 F.2d 357, 360–61 (1st Cir.1989) (embezzlement by bank employee under 18 U.S.C. § 656); *United States v. Scroggins,* 880 F.2d 1204, 1211–14 (11th Cir.1989) (theft from postal vending machines under 18 U.S.C. § 641). We reject the contrary result of the Ninth Circuit in *United States v. Restrepo,* 883 F.2d 781, 786 (9th Cir.1989), on account of that decision's questionable invocation of the rule of lenity to achieve a result at odds with the clear directive of the Sentencing Commission on this issue. *See White,* 888 F.2d at 497–98 (rejecting rationale of *Restrepo* ). This was not a case in which information unknown to the government was disclosed pursuant to a cooperation agreement and therefore could not be used in determining the applicable guideline range under *Guidelines* § 1B1.8. *See Shorteeth,* 887 F.2d at 256–57. Rather, the district court could consider the quantities associated with the other counts for which no conviction was obtained; its finding of an aggregated quantity of more than two kilograms of cocaine distributed as part of a common scheme or plan is not clearly erroneous given defendant's admissions and the corroborating affidavit of the DEA agent. *See* n. 2 *supra* p. 1560; *United States v. Vopravil,* 891 F.2d 155, 157–59 (7th Cir.1989) (similar fact pattern); *United States v. Vinson,* 886 F.2d 740, 742 (4th

---

**3.** A defendant who is guilty probably has less incentive to plead guilty under the Sentencing Guidelines, however, that represents a legislative and executive policy choice as embodied in the enactment of the Sentencing Guidelines, and it is doubtful whether such an effect may inform our judgment. The Guidelines have changed the incentive to plead guilty because more adverse information is likely to be considered in imposing sentence, but the Guidelines have not eliminated the incentive. *U.S. v. Talpette,* 872 F.2d at 105. Most importantly, a defendant may limit his exposure to incarceration and fines by pleading guilty, because the offense to which the defendant pleads guilty represents maximum exposure, regardless of whether the negative information is part of a stipulated offense which results in use of a more severe guideline section, *Guidelines* § 1B1.2(a), or the negative information is part the relevant conduct which will be considered in determining a more severe guideline range for the offense to which the defendant pled guilty, *Guidelines* § 1B1.2(b). Stated another way, dismissal of other charges as part of a plea agreement generally will result in a lesser sentence than if the defendant was tried and convicted on all counts. Another reason to plead guilty is the possible two-level reduction for acceptance of personal responsibility. *Guidelines* § 3E1.1; *see United States v. Henry,* 883 F.2d 1010, 1011–12 (11th Cir.1989) (holding § 3E1.1 does not violate the fifth or sixth amendment). Finally, a guilty plea may work to a defendant's advantage when a judge exercises his discretion in deciding upon the actual sentence, albeit within the correct guideline range.

0

Cir.1989) (type and amount of drugs and defendant's involvement are all fact questions subject to clearly erroneous standard), *cert. denied,* —— U.S. ——, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990).

## II.

 Defendant next contends that the district court erred in characterizing him as an "organizer, leader, manager or supervisor" in a criminal activity under *Guidelines* § 3B1.1(c). This factual determination is properly reviewed under the clearly erroneous standard. *United States v. Beaulieu,* 893 F.2d 1177, 1181 (10th Cir. 1989). We recently held that the sentencing court may consider any reliable information, including hearsay, in arriving at the appropriate sentence, and that includes determining a defendant's role in criminal activity. *Beaulieu,* 893 F.2d at 1180–81.

At sentencing, the defendant contended that there was no indication in the plea agreement that he would be considered for the two-level enhancement applicable when the "defendant was an organizer, leader, manager or supervisor" in criminal activity under § 3B1.1(c). The defendant also contended that what was involved was a "one-person" event, defendant's final cocaine sale to the undercover agent. On the other hand, the government indicated that it did not consider the defendant an organizer because the "mule" [4] whom defendant enlisted had agreed to participate in a future cocaine transaction which was aborted by defendant's arrest. The district court relied upon the presentence report which claimed that defendant called the undercover agent to advise the agent (1) who the mule was, and (2) when the mule had arrived with the two kilograms of cocaine that were later seized. According to the report, this information was provided by the defendant to the probation officer. Thus, the trial court had at least three versions of what occurred.

Section 3B1.1 adjusts the offense level upward depending upon a defendant's role in criminal activity. If the defendant was an organizer or leader of a criminal activity with five or more persons or that was otherwise extensive, a four-level enhancement is required. *Guidelines* § 3B1.1(a). If the defendant was merely a manager or supervisor of the same type of activity, a three-level enhancement is appropriate. *Id.* § 3B1.1(b). The two-level enhancement of § 3B1.1(c) applied by the district court appears to be indicated for organizers and managers of small criminal enterprises which are not extensive in scope and have fewer than five participants. *See Guidelines* § 3B1.1 & commentary.

Defendant argues that the district court determined that he was an "organizer, leader, manager or supervisor," based upon future criminal activity; however, the trial judge found that codefendant Shelton [5] was involved in a "mule" capacity for the two kilograms of cocaine associated with the August 26, 1988 distribution. This distribution was defendant's offense of conviction. Recruiting and instructing an accomplice to transport drugs creates a permissible inference that the defendant's role had been transformed from strictly individual to supervisory. *See Guidelines* § 3B1.1, commentary, application n. 3 (discussing differences between organizer or leader versus manager or supervisor).

As stated by the First Circuit:

There need be no particular formality in the ossature of a narcotics enterprise to justify invocation of section 3B1.1 Drug dealers are unlikely to make much use of position descriptions or organizational charts. Particularly with respect to the relatively small criminal cabals contemplated by section 3B1.1(c)—2 to 5 people —"the distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of re-

---

4. A "mule" is a slang term defined as "a person paid to carry or transport contraband, esp[ecially] drugs, for a smuggler." *Random House Dictionary* 1261 (2d ed. unabr. 1987).

5. Codefendant Shelton entered a plea of guilty to simple possession of cocaine.

sponsibility." *Manual* § 3B1.1, Background at 3.4

*United States v. Diaz–Villafane,* 874 F.2d 43, 48 (1st Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). Defendant's reliance upon codefendant Shelton to "mule" the two kilograms of cocaine involved in the August 26, 1988 transaction, together with defendant's admission through counsel that Shelton was to work for the defendant in supplying additional cocaine to the undercover agent, support the judge's factual finding that defendant was a supervisor under § 3B1.1. Consequently, we are bound by the trial judge's factual determination given sufficient supporting evidence. *Id.* at 48–49.

### III.

■ Implicit in defendant's foregoing arguments is that the district court should have adhered to the plea agreement and sentenced him strictly and solely according to the stipulated facts contained therein. Although the Sentencing Guidelines provide that the parties may stipulate to "facts relevant to sentencing," *Guidelines* § 6B1.4, several reasons undercut defendant's implicit argument. First, although the district court should consider the stipulated facts carefully, "[t]he court is not bound by the stipulation, but may with the aid of the presentence report, determine the facts relevant to sentencing." *Id.* § 6B1.4(d); *United States v. Forbes,* 888 F.2d 752, 754 (11th Cir.1989). Second, the terms of this plea agreement[6] acknowledged that (1) the stipulations were not binding upon the court, and (2) the court retained the power to determine relevant

facts. Third, at the time the district court accepts a plea agreement, all of the facts are not known to it; the presentence investigation and resulting report allow the court to exercise sentencing authority meaningfully in light of relevant facts. Fourth, while we construe plea agreements with reference to a defendant's reasonable understanding of the agreement upon entry of the plea, *Shorteeth,* 887 F.2d at 256, the law provides that the district court fulfills its responsibility by advising the defendant of any mandatory minimum penalty and the maximum penalty for the offense which the plea of guilty is tendered. Fed.R.Crim.P. 11(c)(1); *Fernandez,* 877 F.2d at 1143. The district court "is not required to inform the defendant of the applicable guideline range or the actual sentence he will receive." *United States v. Thomas,* 894 F.2d 996, 997 (8th Cir.1990); *Fernandez,*[7] 877 F.2d at 1143. Pleading guilty generally is not a trial voyage to test the sentencing waters for acceptable leniency. *United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir.1989), *but see United States v. Burns,* 893 F.2d 1343, 1348 (D.C. Cir.1990) (plea agreement "specifically provided that if either the probation office or the trial court reached a calculation different than the 30 to 37 months that the parties had agreed upon, the plea bargain would be null and void"). Here, no allegation is made that defendant was unaware of the maximum potential penalty[8] and it would have been unreasonable for the defendant to disregard such information.

The plea agreement contained a nonbinding recommendation concerning the appropriate guideline range pursuant to Fed.R.

---

**6.** The plea agreement provided in pertinent part:

> The parties also recognize that these stipulations are not binding on the Court or the Probation Department. Further, it is understood that both parties reserve the right to file a statement in response to the Probation Department's presentence report, as provided in § 6A1.2(a). Finally, the parties acknowledge that the Court is free, pursuant to the procedure set forth at §§ 6A1.3 and 6B1.4, to reach its own findings regarding the facts and factors that are relevant to sentencing.
> Rec. vol. I, doc. 2 at 3.

**7.** Although the court in *Fernandez,* indicated that the district court has discretion to "explain the likely Guidelines sentence to the defendant before accepting the plea," any such explanation is limited necessarily by the absence of a presentence report which may report material facts or analysis not disclosed to the district court at the time of sentencing. Like the Second Circuit, we decline to adopt a requirement that the district court estimate the sentence before the plea is entered.

**8.** At no time has defendant moved to withdraw his plea pursuant to Fed.R.Crim.P. 32(d).

Crim.P. 11(e)(1)(B). No suggestion has been made that the district court failed to advise the defendant that the court was not bound by such recommendation. Fed.R. Crim.P. 11(e)(2) & *Guidelines* § 6B1.1(b). Accordingly, the district court was not required to accept the recommendation unless it was within the applicable guideline range. *Guideline* § 6B1.2(b)(1). Because the stipulated facts did not include all relevant conduct, the recommendation was not within the appropriate guideline range and the district court correctly declined the recommendation.

### IV.

▉ Defendant next contends that the district court's findings at sentencing are insufficient concerning the quantity of cocaine and the role of the defendant. The district court found that the "[d]efendant had in fact delivered in excess of two kilograms [of cocaine] to the DEA special agent on three occasions" and that the "[d]efendant admittedly utilized co-defendant Thomas Shelton as a mule for the two kilograms of cocaine distributed on August 26, 1988." Rec. vol. II at 16. Defendant cites *United States v. Peterman*, 841 F.2d 1474, 1482 (10th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 783, 102 L.Ed.2d 774 (1989), for the proposition that this court must have an adequate record to determine whether the district court relied upon accurate information in sentencing and whether the court should have granted an evidentiary hearing given contested issues of fact. Defendant's challenge implicates Fed.R. Crim.P. 32(c)(3)(D).[9]

In accordance with Fed.R.Crim.P. 32(a) and *Guidelines* § 6A1.2, the defendant and his counsel were provided an opportunity to review the probation officer's determination of the sentencing classification and guideline range. *See* Fed.R.Crim.P.

32(c)(2)(B). Defendant filed written objections to the presentence report listing each numbered paragraph to which he objected. Rec. vol. I, doc. 4. The probation officer responded to each objection and the district court entertained further discussion at the sentencing hearing.

"[W]here there are disputed facts material to the sentencing decision, the district court must cause the record to reflect its resolution thereof, particularly when the dispute is called to the court's attention." *United States v. Warters*, 885 F.2d 1266, 1272 (5th Cir.1989). The record must reflect resolution of any "factor important to the sentencing determination" that is in dispute. *See Guidelines* § 6A1.3; Fed.R. Crim.P. 32(c)(3)(D). If the disputed facts are not important to the sentencing determination and will not be relied upon in sentencing, the district court should say so. Fed.R.Crim.P. 32(c)(3)(D); *United States v. Rantz*, 862 F.2d 808, 813–14 (10th Cir. 1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1554, 103 L.Ed.2d 857 (1989). The written resolution of the disputed factual matter or a statement that the disputed factual matter will not be relied upon must then "be attached to the presentence report before it is made available to prison or parole authorities." *United States v. Strayer*, 846 F.2d 1262, 1267 (10th Cir.1988). This requirement may be satisfied by attaching a written form or the sentencing transcript to the presentence report. *Peterman*, 841 F.2d at 1483–84.

Initially, we note that *Peterman* involved the lack of any findings by the district court concerning disputed factual matters; consequently, this court was unable to determine whether the trial court considered unreliable information or whether an evidentiary hearing was required. 841 F.2d at 1481–82. The present case is distinguishable—after the parties narrowed their dis-

---

9. Fed.R.Crim.P. 32(c)(3)(D) provides:
 If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the

allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.

pute, *Guidelines* § 6A1.2, the district made record findings regarding the quantity of cocaine involved and the defendant's role in this case. Both of those findings are based upon statements made by the defendant to the probation officer and are corroborated by the affidavit of the DEA agent. Significantly, the defendant did not challenge those paragraphs in the presentence report (¶¶ 3–14) pertaining to the offense conduct. These paragraphs contain admissions by the defendant to the probation officer concerning quantity and involvement which support the district court's findings on these points.

Still, was the district court required to make more detailed findings after hearing some yet-to-be-offered evidence? Under the circumstances of this case, we think not. The commentary to *Guidelines* § 6A1.3 provides:

> When a reasonable dispute exists about any factor important to the sentencing determination, the court must ensure that the parties have an adequate opportunity to present relevant information. Written statements of counsel or affidavits of witnesses may be adequate under many circumstances. An evidentiary hearing may sometimes be the only reliable way to resolve disputed issues. *See United States v. Fatico*, 603 F.2d 1053, 1057 n. 9 (2d Cir.1979). The sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law.

Here, the district court allowed the defendant to be heard concerning his objections both orally and in writing. Several of the objections to the presentence report were legal in nature, not factual, and concern the parameters of the guidelines. The trial court's findings are based largely upon defendant's statements as related in the presentence report and we decline to adopt a rule requiring additional independent corroborating evidence. *See Beaulieu*, 893 F.2d at 1181–82 (reliable hearsay or other information may be used in sentencing); *Wright*, 873 F.2d at 441 (probation officer's testimony at sentencing hearing whether hearsay or not was admissible). No rea-

son, such as unreliability, has been advanced to disregard the defendant's statements as related by the presentence report. Moreover, defendant failed to request an evidentiary hearing to supplement his written objections, before or during sentencing. Although a defendant's failure to request an evidentiary hearing upon disputed facts relied upon by the district court is not dispositive on appeal, *United States v. Gomez*, 831 F.2d 453, 455 (1987), it is a factor which bears upon our consideration because the defendant is in the best position to inform the district court of the value of an evidentiary hearing in these circumstances.

■ Some of the alleged factual inaccuracies were resolved prior to sentencing, others plainly were not relied upon by the district court and the two at issue in this appeal were resolved against defendant. The district court did not attach a written determination to the presentence report containing its resolution of the factual inaccuracies and a statement that any remaining factual inaccuracies were not important to the sentencing determination and were not relied upon. *See* Fed.R.Crim.P. 32(c)(3)(D); *Guidelines* § 6A1.3. This ministerial task does not admit of district court discretion, *United States v. Corral*, 823 F.2d 1389, 1394 (10th Cir.1987), *cert. denied*, 486 U.S. 1054, 108 S.Ct. 2820, 100 L.Ed.2d 921 (1988), but it may be accomplished on remand and does not require resentencing. *Forbes*, 888 F.2d at 755; *United States v. Gattas*, 862 F.2d 1432, 1435 (10th Cir.1988); *United States v. Golightly*, 811 F.2d 1366, 1368 (10th Cir.1987). Upon remand, the district court shall prepare the required written record and forward it to the probation department so that it may be attached to the presentence report and forwarded in turn to the appropriate FCI.

## V.

■ Finally, defendant argues that guideline sentencing is a denial of procedural and substantive due process because it (1) fails to consider a defendant's age, education, vocational skills, mental and

emotional condition, physical condition and other individual concerns and (2) does not allow the defendant to challenge the weight accorded the various factors which determine the sentence. We rejected an essentially identical challenge in *United States v. Thomas*, 884 F.2d 540, 542–44 (10th Cir.1989), and this is an issue on which the circuits have been consistent. *See Thomas*, 884 F.2d 542 (listing eight other circuits which have rejected a due process challenge to the Guidelines); *see also United States v. Brady*, 895 F.2d 538, 543 (9th Cir.1990); *United States v. Erves*, 880 F.2d 376, 379 (11th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 416, 107 L.Ed.2d 381 (1989).

AFFIRMED and REMANDED.