**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jerry Arthur BARELA, Defendant–
Appellant.**

**No. 91–8050.**

United States Court of Appeals,
Tenth Circuit.

Aug. 24, 1992.

Patrick J. Crank, Asst. U.S. Atty., Casper, Wyo. (Richard A. Stacy, U.S. Atty., with him on the brief), for plaintiff-appellee.

Donald E. Miller, Cheyenne, Wyo., for defendant-appellant.

LOGAN, SETH, and SNEED,* Circuit Judges.

SNEED, Circuit Judge

Jerry Arthur Barela appeals his convictions under 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a) & 846 of aiding and abetting in the distribution of LSD and of conspiracy to distribute LSD. He also seeks review of his 81 month sentence under the United States Sentencing Guidelines. We affirm.

I.

FACTS AND PROCEEDINGS BELOW

On December 6, 1990, a Wyoming grand jury returned a four count indictment against Barela charging him with (1) conspiracy to distribute LSD in violation of 21 U.S.C. § 846; (2) aiding and abetting Rudy Alan Vialpando in the distribution of LSD in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (3) aiding and abetting Tony Dean Leazenby in the distribution of LSD in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (4) possession with the intent to distribute LSD in violation of 21 U.S.C. § 841(a)(1). In a jury trial, Barela was found guilty of the first three counts, but only was convicted of the lesser-included offense of mere possession under the fourth count. Barela was sentenced to 81 months of jail, and ten years of supervised release.

The facts supporting counts one through three were based on a criminal investigation undertaken by the Wyoming Attorney General. Through separate undercover purchases of LSD from Leazenby and Vialpando, it was determined that Barela was the source of the drugs.

An undercover officer was investigating Leazenby, and, on April 18, 1990, approached him seeking to purchase some LSD. The officer asked Leazenby if he could buy a larger quantity of drugs than Leazenby had on hand. Leazenby told the undercover officer to try Vialpando, who was expecting 100 hits of LSD from Leazenby's source in California.

The following day, the officer contacted Vialpando, and was able to purchase 90 hits of LSD. Vialpando, cooperating with the government, testified that, earlier in April, Barela called Vialpando from San Diego, California, to arrange the shipment of some "sheets" of LSD (about 100 hits).

On April 26, the undercover officer returned to Leazenby and purchased about 40 hits of LSD. The sheets purchased from Leazenby and those from Vialpando were virtually identical and were made from the same paper stock, tending to indi-

* Honorable Joseph T. Sneed, Senior Circuit Judge of the Ninth Circuit Court of Appeals, sitting by designation.

cate that they were manufactured at the same source.

The facts supporting the conviction of the lesser-included offense of mere possession of LSD under count four arise from a simple traffic stop. On July 26, 1990, deputies from the Albany County Sheriff's Office stopped a van outside of Laramie, Wyoming, for erratic driving. The van was Barela's, and he was a passenger. As the product of a legal search, the officers discovered some marijuana, drug paraphernalia, 44 blotter-paper hits of LSD, and a vial containing LSD liquid. The blotter-paper hits were on a different stock of paper than those purchased from Vialpando and Leazenby, to which Barela was linked under counts one through three. It appears that the traffic stop by the deputies of the Albany Sheriff's Office was not part of the Attorney General's investigation.

At trial, Barela objected to alleged hearsay testimony of the undercover officer. The officer stated that an informant, named Lucin, told the officer that Leazenby called San Diego from the informant's telephone, and that Leazenby ordered 100 hits of LSD in that phone conversation. The court overruled Barela's objection and instructed the jury:

> Well, the jury may regard it not for the truth of this fact, but for the fact that this is something that came to [the undercover officer] in the course of his investigation upon which he subsequently acted. And you may regard it for that purpose only.

During closing arguments, the prosecution drew upon the officer's testimony. The prosecutor stated:

> When Jerry Barela picks up the money transfer he supplies this information. He puts down his phone number is 619–483–9536. Well, what's the relevant phone call on Government's Exhibit No. 4.
>
> The phone bill for Lucin. Okay. *He says Leazenby called Jerry Barela in California.* That number is 619–483–9536. (emphasis added)

Barela did not object to the closing.

On appeal, Barela argues that it was improper to admit the informer Lucin's out of court statement because it was hearsay not within any exception, and, additionally, because the prosecutor improperly drew upon the statement for a purpose other than was intended by the court. Barela also argues that there was insufficient evidence, excluding the "hearsay," upon which a reasonable jury could link him to the Leazenby transaction, and thus the count one and count three convictions should be overturned. Finally, Barela challenges his sentence of 81 months, arguing that it was improper under the Guidelines for the district court to add quantities of drugs discovered during the traffic stop to the total amount of drugs upon which the court based Barela's sentence.

## II.

## JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291.

For challenges to the sufficiency of evidence, we review the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the government. *United States v. Burns,* 624 F.2d 95 (10th Cir.), *cert. denied,* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980).

We review any factual finding of the district court in its application of the United States Sentencing Guidelines for clear error. If the application involves contested issues of law, however, we review de novo. *See* 18 U.S.C. § 3742(e); *United States v. Rutter,* 897 F.2d 1558 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990).

## III.

## DISCUSSION

A. *Was the undercover officer's testimony regarding what an informant said hearsay not within any exception?*

As pointed out above, the district court ruled that the reference to the informant's

statements could be used as nonhearsay, for the limited purpose of showing the jury "something that came to [the undercover officer] in the course of his investigation upon which he subsequently acted." The court specifically instructed the jury not to regard the testimony for its truth.

■ The Court was correct when it ruled that a statement such as that made by the undercover officer may come in for a nonprejudicial relevant use, such as demonstrating reasons for taking certain investigatory steps. *See, e.g., United States v. Morales–Macias,* 855 F.2d 693, 695 (10th Cir.1988); *United States v. Freeman,* 816 F.2d 558, 563 (10th Cir.1987). Moreover, the prosecutor's use of the statement in his closing in a way inconsistent with the limited nonhearsay purpose cannot rise to the level of prejudice requiring plain error reversal.[1] Barela himself twice brought the content of the statement to the jury during the trial. Barela argued that the informant Lucin was attempting to "rat out" Barela, a competitor, and was lying about the phone conversation. He cannot complain on appeal about evidence that he himself used in his defense.

B. *Was there sufficient evidence linking Barela to the Leazenby transaction to convict under counts one and three?*

■ Barela next posits that there was insufficient evidence to link him to the LSD transactions with Leazenby, and that his convictions under counts one and three should therefore be reversed. We disagree. Evidence in the record before us amply links Barela to the Leazenby transaction to support the conviction.[2] For instance, evidence was introduced establishing that Leazenby directed the undercover officer to Vialpando, who, the officer was told, would receive a shipment from Leaz-

enby's California source. Vialpando testified that the shared drug source was Barela. Moreover, the blotter-paper samples obtained from Leazenby and Vialpando were identical, indicating that they were manufactured at the same source. Even more damaging was telephone evidence. Both Vialpando and Lucin's phone records showed calls placed to the same San Diego phone number. Based on evidence *introduced by Barela,* it was established that Leazenby placed the San Diego call while a house guest of Lucin's. There was sufficient evidence to convict on counts one and three.

C. *Did the district court err by adding the drug quantities found during the count IV traffic stop to the total weight of drugs used to calculate Barela's sentence?*

■ The fixing of drug quantities for sentencing purposes is calculated pursuant to sections 1B1.3(a)(2) and 3D1.2(d) of the Sentencing Guidelines. Section 1B1.3(a)(2) of the Guidelines instructs the court to consider relevant conduct as follows:

> solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction....

U.S.S.G. § 1B1.3(a)(2) (Nov.1992). The application note in turn explains:

> "Offenses of a character for which § 3D1.2(d) would require grouping of multiple counts," as used in [this subsection], applies to offenses for which grouping of counts would be required under § 3D1.2(d) had the defendant been convicted of multiple counts. Application of this provision does not require the defendant, in fact, to have been convicted

---

1. Because there was no objection to the closing, our task is to determine if there was plain error rising to a level that affected substantial rights of the accused in a serious way and likely resulted in a miscarriage of justice. *See* Fed.R.App.P. 52(a); *United States v. Young,* 470 U.S. 1, 15–17, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985).

2. We should note initially that Barela's count one conviction of conspiracy would stand irrespective of the sufficiency of the evidence to support the count three charge which links Barela to Leazenby. His complicity with Vialpando alone supports the count one conspiracy charge. Because we find sufficient evidence to link Barela to the Leazenby transaction as well, the issue is academic.

of multiple counts. For example, where the defendant engaged in three drug sales of 10, 15, and 20 grams of cocaine, as part of the same course of conduct or common scheme or plan, [this subsection] provides that the total quantity of cocaine involved (45 grams) is to be used to determine the offense level even if the defendant is convicted of a single count charging only one of the sales. . . .

U.S.S.G. § 1B1.3(a)(2) commentary (n. 2) (Nov.1992). And finally, section 3D1.2(d) requires grouping of counts

[w]hen the offense level is determined largely on the basis of total amount of harm or loss, the quantity of the substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

. . . .

U.S.S.G. § 3D1.2(d) (Nov.1990).

The weight of drugs from the Leazenby and Vialpando sales totalled .83 grams. The LSD weight charged for the drugs confiscated from Barela's van was .25 grams. The district court, following the recommendation of the presentence report, used the total weight, 1.08 grams, to calculate the sentence. By adding the drugs from the van, Barela's base offense level was effectively increased by two levels.

Barela's argument that the two level increase from the additional .25 grams of LSD was both improper and contrary to the intent of the Guidelines is not frivolous. He points out that, under section 3D1.2(d), simple possession is specifically excluded from grouping as a closely related count with the more serious drug crimes for which he was convicted under counts one through three. *See* U.S.S.G. § 3D1.2(d) (Nov.1990) (excluding offense conduct under U.S.S.G. § 2D2.1 (Nov.1990) (Unlawful Possession)). According to Barela, the Guidelines "never intended to group a conviction for simple possession with a conviction for possession with intent to deliver." [3]

The argument, however, is contrary to both the specific instruction of the Guidelines and our prior decisions. The commentary under section 1B1.3(a)(2) is clear in its direction that a defendant need not be convicted of multiple counts for the additional drug quantities to be added to the total weight of drugs used to determine the sentence. If a failure to obtain any conviction permits grouping as a closely related count, it must follow that conviction of a lesser included offense should also permit such grouping. Indeed, we addressed a very similar argument in *United States v. Rutter*, 897 F.2d 1558, 1561–62 (10th Cir.1990). *Rutter* involved a case where the district court added quantities of drugs to the total sentencing weight based upon charges that were dismissed as a result of a plea agreement. We there held that the Guidelines require aggregating the additional quantities "regardless of whether the defendant was convicted of the underlying offenses pertaining to the additional amounts." *Id.* at 1562. The sole limiting factor to such aggregating of amounts is the necessity of the district court to find, as it did here, that the drug quantities were "part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.*[4] We hold that it was not clearly erroneous for the district court to find that the quantity of drugs found in the van was part of Barela's ongoing scheme to distribute LSD in the state of Wyoming.

AFFIRMED.

---

**3.** Barela's position is that the count 4 conviction should be grouped as a separate offense, which carries an offense level of 8. Because the level 8 offense is "9 or more levels less serious" than Barela's convictions under the other counts, the court would be required to disregard the offense entirely in determining sentence. U.S.S.G. § 3D1.4(c) (Nov.1990).

**4.** This position has since been reinforced by new commentary to the Guidelines, which makes clear that the subsection is not limited by the requirement that the offenses be proscribed by the same statutory provisions. *See* U.S.S.G. § 1B1.3 commentary (n. 2) (Nov.1991); U.S.S.G. App. C commentary (No. 389) (Nov.1991).