**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

HARRY ALLAN STROUP,

    Defendant - Appellant.

No. 07-8031
(D.C. No. 06-CR-178-02-CAB)
(District of Wyoming)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **HOLLOWAY**, and **TYMKOVICH**, Circuit Judges.[**]

---

## I. INTRODUCTION

On July 19, 2006, a District of Wyoming grand jury returned a two count

indictment charging the Defendant-Appellant, Harry Allan Stroup, and his co-

Defendant, Gabrial Lobato, with conspiring to possess with intent to distribute

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P.32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. After Mr. Stroup pled not guilty on August 10, 2006, a jury trial was set for January 9, 2007. However, on January 5, 2007, Mr. Stroup agreed to plead guilty pursuant to a plea agreement. In that plea agreement, Mr. Stroup pled guilty to possession with the intent to distribute more than fifty grams but less than 200 grams of methamphetamine. During the January 5 change of plea hearing, the district court ordered the Probation Office to prepare a Pre-Sentence Investigation Report ("PSR"). The PSR determined that the amount of methamphetamine attributable to Mr. Stroup was 507 grams. The district court held an evidentiary hearing on April 9, 2007 to establish the relevant conduct and drug amount for sentencing.

On April 13, 2007, the district court found that the Defendant was responsible for 455.5 grams of methamphetamine warranting a base offense level of 30. Mr. Stroup was granted a three level reduction for acceptance of responsibility, thereby resulting in a base offense level of 27. With a base offense level of 27 and a criminal history category IV, the district court sentenced Mr. Stroup to 110 months' imprisonment, five years' supervised release, a $100 special assessment, and a $500 fine. The judgment was filed on April 17, and the Defendant's notice of appeal was filed one day later.

## II. BACKGROUND

On January 5, 2007, the district court held a change of plea hearing to

allow Mr. Stroup to file a guilty plea pursuant to a plea agreement. R.3 at 1. At the conclusion of this hearing, the district court ordered the preparation of a PSR. R.3 at 14. Pursuant to the plea agreement, Mr. Stroup admitted conspiring to possess with the intent to distribute more than fifty grams but less than 200 grams of methamphetamine. However, the PSR concluded that Mr. Stroup was responsible for roughly 507 grams of methamphetamine in the course of the conspiracy.

On April 5, 2007, after reviewing all the evidence before it – including both the plea agreement and the PSR, the district court concluded that the stipulated drug quantity in the plea agreement (more than fifty grams but less than 200 grams) was too low. R.4 at 2-5. The government explained to the district court that this amount was the most "readily provable" amount. Specifically, the government stated that this calculation was based on statements made by Laurie Gausvik claiming to have sold a total of five ounces of methamphetamine to Mr. Stroup at regular intervals over the course of their interaction.[1]

On April 9, 2007, the parties appeared at the district court for the evidentiary hearing on the proper drug quantity. R.7 at 1. The final sentencing hearing, where Mr. Stroup's sentence was imposed, occurred on April 13, 2007 and the court found the drug quantity to be 455.5 grams. R.6 at 1.

An examination of how the PSR arrived at the 507 gram amount is

---

[1] Five ounces of methamphetamine is approximately 142 grams.

necessary. The quantity in the PSR was based on investigative reports, written statements by witnesses, and discussions with Wyoming Division of Criminal Investigation Special Agent Ryan Mullholland. First, the PSR referenced the regular transactions between Ms. Gausvik and the Defendant that provided the foundation for the plea agreement. However, after further examination and consideration of statements made by Cory Anderson (one of Ms. Gausvik's distributors who routinely dealt with Mr. Stroup), the Probation Office found that the total amount involved in these regular transactions was twelve ounces rather than five. Twelve ounces of methamphetamine is approximately 340 grams. Also, the PSR stated that after the regular transactions between Ms. Gausvik and the Defendant-Appellant had ended, Ms. Gausvik provided Mr. Stroup with another four ounces of methamphetamine. Four ounces is approximately 113 grams. Thus, the PSR calculated the total amount of methamphetamine involved in the Gausvik-Stroup transactions to be approximately 453 grams.

Second, the PSR considered Mr. Stroup's conduct with Tim Maddelein. The PSR attributed 37 grams to Mr. Stroup based on statements to law enforcement that Mr. Maddelein took money from Mr. Stroup to purchase methamphetamine from Fort Collins, Colorado. Third, Sheila Jongsma told officers that on five or six occasions, she had provided Mr. Stroup with three and a half grams of methamphetamine. The Jongsma-Stroup transactions constitute approximately 17 grams. By totaling these three categories (Gausvik/Anderson,

Maddelein and Jongsma) of methamphetamine transactions, the Probation Office arrived at a total of 507 grams. The PSR recommended a base offense level of 29, after considering a three level reduction for acceptance of responsibility, whereas the plea agreement recommended a base offense level of 23. The Guidelines range for a base offense level of 29 and a criminal history category IV is 121-151 months whereas a base offense level of 23 advises a range of 70-87 months.

A number of individuals testified at the April 9, 2007 sentencing hearing. The government presented five witness: Cory Anderson, Laurie Gausvik, Tim Maddelein, Sheila Jongsma, and Special Agent Ryan Mullholland of the Wyoming Division of Criminal Investigation. The Defense called two witnesses: Co-Defendant Gabrial Lobato and Jessica Crumrine.

The government first called Mr. Anderson. Mr. Anderson sold methamphetamine for Laurie Gausvik and was addicted to methamphetamine. In response to a question from the district court, Mr. Anderson indicated that the Defendant received two to three ounces of methamphetamine every week from Laurie Gausvik for a period of approximately six months. Mr. Anderson stated that he knew the weight of the methamphetamine in these transactions because he had personally weighed the drugs. When the court asked Mr. Anderson to provide his best estimate for the total amount provided to Mr. Stroup during the approximate six month period, Mr. Anderson replied that it was "probably maybe

two pounds, three, somewhere around there." R. VII at 11. Mr. Anderson said that exact estimates were impossible to give because he was using methamphetamine at the time which made it difficult to keep track of the drug sales. In response to a question from the court, Mr. Anderson stated that the Probation Officer's estimation that the Defendant received one ounce per week for twelve weeks was low and that Mr. Stroup usually received two ounces.

The government next called Laurie Gausvik who sold methamphetamine and was also an addict. In her testimony, Ms. Gausvik stated that in the beginning of her interaction with Mr. Stroup, she sold him one and sometimes two ounces at a time. When asked about the total amount sold to Mr. Stroup, Ms. Gausvik deferred to Mr. Anderson on the best estimate for the aggregate weight, but did indicate that it was some number of pounds. At the end of Ms. Gausvik's testimony, the court attempted to summarize with her the amount that was sold to Mr. Stroup. Ms. Gausvik said that Mr. Stroup received about an ounce, or a little more, per week for twelve weeks. Next, Ms. Gausvik stated that after that twelve week period of sales, Mr. Stroup received roughly three ounces and four or five grams from her in three different transactions.

Third, the government called Tim Maddelein who, along with Frank King, sold methamphetamine received from Mr. Lobato. Mr. Maddelein testified that Mr. Stroup had purchased meth in various smaller quantities from him. On cross-examination, Mr. Maddelein stated that Sheila Jongsma sold methamphetamine

for Mr. King and the Defendant was a purchaser. The court asked for clarification on the amount sold to Mr. Stroup and Mr. Maddelein stated that at the most, he sold him on "a dozen or two dozen times...a gram or two...at the most..." R. VII at 63. Mr. Maddelein stated that he and Mr. King went to Fort Collins, Colorado to purchase methamphetamine. In his testimony, Mr. Maddelein stated that he believed Mr. Stroup to have purchased roughly one gram of methamphetamine stemming from the Fort Collins trip.

Fourth, the government called Sheila Jongsma who witnessed several methamphetamine transactions involving Mr. King. Ms. Jongsma stated that she accompanied Mr. King on trips to sell the Defendant methamphetamine. In her testimony, Ms. Jongsma indicated that on five or more times, Mr. King would sell "between one and three-quarter and three and a half" grams to Mr. Stroup.

Finally, the government called Special Agent Ryan Mulholland of the Wyoming Division of Criminal Investigation. Agent Mulholland testified that he assisted Special Agent Loy Young with the investigation into the methamphetamine sales involving the Defendant; specifically, he interviewed Ms. Gausvik and Mr. Anderson. Mr. Mulholland stated that he could not provide an approximate amount of methamphetamine attributable to Mr. Stroup. However, when asked by the Defense whether the amount stipulated to by the Defense and the government, five ounces or roughly 140 grams, was generally reasonable, Mr. Mulholland agreed that five ounces seemed reasonable. Mr. Mulholland also

stated that while the exact dates referenced by Mr. Anderson and Ms. Gausvik may not be entirely accurate, the interviews conducted with them revealed statements that corroborate one another in many respects.

The Defense then presented two witnesses, Gabrial Lobato, the co-defendant, and Jessica Crumrine. Gabrial Lobato testified that he did not have a prior relationship with Mr. Stroup and had only seen him at Mr. King's house. Mr. Lobato also testified that he engaged in approximately ten drug transactions with Ms. Gausvik, with one half involving methamphetamine and the other half involving marijuana. In total, Mr. Lobato stated that he provided Ms. Gausvik with less than four ounces of methamphetamine. On cross examination, Mr. Lobato testified that the amount of methamphetamine he pled guilty to trafficking, between five and fifteen kilograms, was incorrect and he only assumed responsibility to prevent his girlfriend from being indicted.

Jessica Crumrine then testified for the Defense and stated that she never saw Mr. Stroup sell methamphetamine. She also stated that Mr. Anderson was unreliable because he made false statements to law enforcement about her in exchange for a reduced sentence to charges that he was facing at the time. The evidentiary hearing concluded after closing argument and the court set the sentencing hearing for April 13.

At the sentencing hearing, the court determined that the amount of methamphetamine attributable to the Defendant was 455.5 grams. This amount

resulted in a base offense level of 30.  U.S.S.G. § 2D1.1(c)(5).  The three level

reduction for acceptance of responsibility resulted in a base offense level of 27.

Mr Stroup had a criminal history category of IV.  The guidelines range for Mr.

Stroup was 100-125 months and the court imposed an incarceration term of 110

months.  On appeal, Mr. Stroup argues that the district court committed clear

error in calculating the quantity of methamphetamine involved.

### III. DISCUSSION

*A. Standard of Review*

This court reviews a district court's drug quantity calculation for clear

error.  *United States v. Dalton*, 409 F.3d 1247, 1252 (10th Cir. 2007); *United

States v. Ryan*, 236 F.3d 1268, 1273 (10th Cir. 2001).  The district court's

determination will be reversed "only if the district court's finding was without

factual support in the record or we are left with the definite and firm conviction

that a mistake has been made."  *United States v. Cernobyl*, 255 F.3d 1215, 1221

(10th Cir. 2001) (citing *Ryan*, 236 F.3d at 1273) (quotations omitted).

Witness credibility is often at issue in sentencing hearings.  *See United

States v. Nieto*, 60 F.3d 1464, 1469-70 (10th Cir. 1995).  The well settled rule in

this circuit is that we defer to the district court's evaluation of the credibility of

witness testimony presented.  *United States v. Browning*, 61 F.3d 752, 754 (10th

Cir. 1995); *Nieto*, 60 F.3d at 1469-70; *United States v. Cook*, 949 F.2d 289, 296

(10th Cir.1991).

*B. Standard of Proof*

Drug quantity determinations must be supported by a preponderance of the evidence and must contain "minimum indicia of reliability." *United States v. Cernobyl*, 255 F.3d 1215, 1221 (10th Cir. 2001). When a district court determines drug quantity, it is acceptable for estimates to be used in calculating the amount, provided that the estimation is based on information containing sufficient indicia of reliability. *United States v. Ruiz-Castro*, 92 F.3d 1519, 1534 (10th Cir. 1996); *Browning*, 61 F.3d at 754.

*C. Defendant Stroup's Appellate Contentions*

Defendant-Appellant Stroup argues on appeal that his sentence should be vacated and that his case should be remanded for re-sentencing; that factually and legally, he had presented compelling grounds that the most reasonable sentence would be one attributing to him that quantity of methamphetamine stipulated to by him and the government in the plea agreement – "at least 50 grams but less than 200 grams of methamphetamine." Appellant's Opening Brief at 10. Mr. Stroup argues that it was clear error that he was sentenced on a finding that his relevant conduct included 455.5 grams. R.6 at 2; *Id.* at 10.

The stipulated amount of less than 200 grams was consistent with both the government and the lead investigator in the case, Young, following review of witness statements and interviews. It was also consistent with defendant's admissions and the co-defendant's testimony. Defendant-Appellant responds to

the government and the PSR, objecting to the government's argument for the larger quantities. Appellant's Opening Brief at 11-12.[2]

In the instant case, the Defendant and the government entered into a plea agreement stipulating that Mr. Stroup was responsible for more than fifty grams but less than 200 grams of methamphetamine. R. 2, #72 at 5. The court requested a PSR to be prepared and the Probation Office determined that Mr. Stroup was responsible for over 500 grams of methamphetamine. This discrepancy led to the court to hold an evidentiary hearing on drug weight.

As noted earlier, the evidentiary hearing involved testimony from several individuals who participated in and witnessed the distribution of methamphetamine to and from Mr. Stroup. Also, Special Agent Mulholland of the Wyoming Criminal Investigation Division personally interviewed some of the individuals and aided in the investigation and was thus familiar with the circumstances of the instant conduct. The district court also heard testimony attacking the credibility of important governmental witnesses. At the conclusion of the evidentiary hearing, the court was left to properly discern the amount of methamphetamine attributable to Mr. Stroup.

As this court has stated in *Cook*, *Nieto*, and *Browning*, a district court determines the degree of credibility for witness testimony. In the instant case, the

---

[2] After both parties fully briefed the issues, Mr. Stroup wrote a letter to the court expressing some new arguments and reiterating points in his brief. We have considered that letter and find it to be of no impact to the issues on appeal.

court found Mr. Anderson to be very reliable and Ms. Gausvik to be reliable as well. Defense counsel elicited testimony from Ms. Crumrine and Mr. Lobato in an attempt to cast doubt on the statements made by Mr. Anderson and Ms. Gausvik. Mr. Lobato's testimony not only directly contradicted the testimony of two other witnesses, but he also in essence testified that he lied under oath during his sentencing hearing. The court ultimately found Mr. Lobato's testimony to be unreliable. This court cannot evaluate witness credibility and we therefore cannot quarrel with the district court's judgment in marshaling witness testimony. The government argues, Brief of Appellee at 5, n.4, and we agree, that the issue is whether the sentencing court committed clear error when it rejected the plea agreement and found the Defendant's relevant conduct involved 455.5 grams of methamphetamine.

We must examine the record to ensure that the district court's determinations have factual support and are based on a minimum degree of reliability. Here, during the evidentiary hearing, Mr. Anderson stated that he had three previous interviews with Wyoming law enforcement officials regarding methamphetamine sales between Ms. Gausvik, whom he was helping, and Mr. Stroup. Mr. Anderson related that he had a better memory of the amounts and numbers of transactions at the present time rather than at the time of the previous interviews due to his heavy usage of methamphetamine. Ms. Gausvik stated that while she procured the methamphetamine, Mr. Anderson took care of packaging,

weighing, and delivering the drugs to Mr. Stroup and therefore he had a better notion of the amount ultimately sold to Mr. Stroup. Both of these individuals (Mr. Anderson and Ms. Gausvik) indicated that Mr. Stroup needed methamphetamine for his own personal use and for sales to other individuals.

The testimony relied upon by the district court contained a sufficient basis for reliability. The testimony relied upon was not extremely vague nor was it contradictory. *See Browning*, 61 F.3d at 755 n.2. Mr. Anderson provided specific weights and estimated the number of transactions with Mr. Stroup. Mr. Anderson admitted being the person who took care of weighing and delivering the methamphetamine to Mr. Stroup for Ms. Gausvik. Mr. Anderson's testimony was consistent with and corroborated Ms. Gausvik's testimony. Similarly, other witnesses gave reasons for reliability of the judge's findings by providing detailed personal accounts of the various transactions. These details include the frequency of the transactions and the amounts involved. Mr. Maddelein testified that he viewed the transactions for methamphetamine with Mr. Stroup and had personal knowledge of the weights. Likewise, Ms. Jongsma testified that she delivered methamphetamine to Mr. Stroup and on occasion used the drug with him. It is also pertinent that during the course of the evidentiary hearing, as counsel would question the witnesses, the court would ask clarifying questions or request details of the conduct described in the testimony. Thus, the court participated in obtaining an accurate calculation of the amount of methamphetamine at issue.

-13-

In the end, the district court determined that the drug quantity involved amounted to 455.5 grams. The district court could use estimates in coming to the final drug quantity. *Ruiz-Castro*, 92 F.3d at 1534. It is proper for a district court to arrive at a drug quantity based on estimations made by witnesses so long as these amounts contain a basis for reliance on them. *Cernobyl*, 255 F.3d at 1221. We are satisfied that there is adequate record support to justify the finding that Mr. Stroup was responsible for 455.5 grams of methamphetamine. The district court's determination of the drug quantity at issue was not clearly erroneous.

Defendant-Appellant also develops the contention that the district court should have abided by the stipulated amount in the plea agreement and sentenced Mr. Stroup to a corresponding prison term. The government contends that the plea agreement was rejected by the district court. The court decided to hold an evidentiary hearing because the PSR and the plea agreement were "...getting to a different quantity, and if that's the case, I guess it is up to the Court to make a determination and I must decide, then, who is lying and who isn't." R.4 at 7.

These statements by the court indicate a lack of certainty with regard to the accuracy of the drug quantity contained in the PSR and plea agreement. The court had the authority to reject the stipulated drug quantity in the plea agreement and hold an evidentiary hearing, in order to determine the proper drug quantity. *See United States v. Rutter*, 897 F.2d 1558, 1564 (10th Cir. 1990).

In the current case, the court followed the standard procedure for

-14-

determining relevant conduct. The Defendant entered into a plea agreement with the government and the Probation Office prepared a PSR as is required under Fed. R. Crim. Proc. 32(c)(1)(a). The PSR found the relevant conduct to involve a higher drug amount than stipulated to by the Defendant and the government in the plea agreement. The Defendant filed an objection to the PSR. To resolve the objection and determine the relevant conduct and drug quantity, the sentencing court held an evidentiary hearing in compliance with Fed. R. Crim. Proc. 32(i)(3)(B). *See United States v. Collins*, 2008 WL 515026, *5 (10th Cir. 2008) ("The district court, in pursuit of its obligation to provide a procedurally reasonable sentence, has an obligation to the process of finding facts by a preponderance of the evidence and being correct upon handing down the particular sentence.").

In *United States v. Rutter*, 897 F.2d 1558, 1564 (10th Cir. 1990),[3] this court held that the sentencing court is not bound by the stipulated facts and may, in addition to the plea agreement, consult the PSR in order to determine the relevant conduct.[4] In the instant case, during the April 5, 2007 hearing the court adjourned

---

[3] *United States v. Rutter* was decided prior to *United States v. Booker*. However, *Booker* does not impact the holding of *Rutter* regarding a sentencing court's consideration of relevant conduct by using the PSR and the plea agreement.

[4] In *Rutter*, there was a plea agreement in force. *Rutter*, 897 F.2d at 1564. The plea agreement in the instant case is not in the record; however, at the April 13, 2007 sentencing hearing, the government stated that "...in the plea agreement
(continued...)

-15-

in order to hold an evidentiary hearing with witnesses to provide testimony. Pursuant to *Rutter*, the court had the authority to question the stipulated amount and hold an evidentiary hearing in order to ensure that the drug quantity was supported by testimony.

We find that the sentencing court did not err by holding an evidentiary hearing and finding a drug quantity above the amount stipulated to in the plea agreement. In sum, we note that Mr. Anderson testified that Mr. Stroup received an ounce or more per week for over twelve weeks from Ms. Gausvik. R.7 at 28. Ms. Gausvik corroborated this testimony, R.7 at 52, and also stated that after that twelve week period of sales, Mr. Stroup received an additional three ounces and four or five grams from her. R.7 at 40, 53. Mr. Maddelein testified that at the most, he sold him on "a dozen or two dozen times...a gram or two...at the most..."

---

[4](...continued)
the defendant agreed at the time that he signed the plea agreement that the Court was not bound by the actual facts – or the actual stipulations in the plea agreement..." R.6 at 6. In *Rutter*, we stated that a sentencing court

> ... should consider the stipulated facts carefully, "[t]he court is not bound by the stipulation, but may with the aid of the presentence report, determine the facts relevant to sentencing." [U.S.S.G.] § 6B1.4(d); *United States v. Forbes*, 888 F.2d 752, 754 (11th Cir.1989). Second, the terms of this plea agreement... acknowledged that (1) the stipulations were not binding upon the court, and (2) the court retained the power to determine relevant facts. Third, at the time the district court accepts a plea agreement, all of the facts are not known to it; the presentence investigation and resulting report allow the court to exercise sentencing authority meaningfully in light of relevant facts. *Rutter*, 897 F.2d at 1564 (footnote omitted).

R.7 at 63.  Finally, Ms. Jongsma testified that on five or six occasions, she would deliver between one and three-quarter and three and a half grams of methamphetamine to Mr. Stroup.  R.7 at 73-74, 75-76.  Based on the foregoing testimony, the court did not commit clear error by finding that Mr. Stroup was responsible for 455.5 grams of methamphetamine.

## IV. CONCLUSION

Accordingly, we AFFIRM the drug quantity calculation and the resulting sentence.

IT IS SO ORDERED.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge